No. 49,640

W. Craig Hutton, As Receiver for Kansas Savings & Loan Association, *Appellee,* v. Rainbow Tower Associates, a Kansas Limited Partnership, *Appellant.*

(601 P.2d 665)

Opinion filed October 27, 1979.

*Douglas Lancaster,* of Wagner, Leek & Mullins, of Shawnee Mission, argued the cause and was on the brief for the appellant.

*Robert M. Modeer,* of Hoskins, King, McGannon, Hahn & Hurwitz, of Kansas City, Missouri, argued the cause, and *Donald F. Bayer,* of the same firm, and *John J. Jurcyk,* of McAnany, Van Cleave & Phillips, of Kansas City, were with him on the brief for the appellee.

The opinion of the court was delivered by

Kaul, J.: This is an interlocutory appeal brought by defendant-appellant in a mortgage foreclosure action. The sole issue presented concerns the appointment of a receiver by the trial court on application of plaintiff-appellee at the time the foreclosure action was filed. The appeal is taken pursuant to the provisions of K.S.A. 60-1305. For convenience the appellant will be referred to as Rainbow or defendant and the appellee as Hutton or plaintiff.

At the outset it should be noted that prior to oral arguments in this court, plaintiff filed a motion to dismiss on the ground the matter pending is moot. Plaintiff's motion was premised on the fact that defendant, after taking this appeal, did, on March 3, 1978, file a bankruptcy petition in the United States District Court. A bankruptcy receiver was appointed and all funds in the hands of the state court receiver were transferred to him. Under

an arrangement approved by the bankruptcy court, the mortgaged property was sold and there is no longer any property in the hands of the state court receiver to be administered or succeeded to. Thus, in essence, plaintiff says, since the bankruptcy proceedings have terminated the state court receivership the issue of wrongful appointment before this court is moot. Nevertheless, since we do not have the record of the bankruptcy proceedings before us and in view of the fact the defendant incorporated in his pleadings below a counterclaim for damages for wrongful appointment, we deem it to be in the interests of the litigants to resolve the issue on the merits.

While the question presented is narrow, a clear understanding of the issue as it was presented to the trial court necessitates recitation of some of the background facts.

Rainbow was certificated as a limited partnership on March 8, 1972. The certificate discloses the partnership was formed by two corporations; the RLT Construction Company, a Missouri corporation and the General Financial Corporation, Inc., a Kansas corporation located in Overland Park. It appears that assignments by the two original partners of partial interests were subsequently made to other parties. On the same date Rainbow executed a mortgage and note to Kansas Savings & Loan Association in the amount of $3,926,800.00. Thereafter, Rainbow commenced construction of Rainbow Tower, a high-rise apartment building. Cost overruns were experienced in the project and in November of 1974, a supplemental mortgage and note for $628,200.00 were negotiated with Kansas Savings & Loan. The building was completed in 1975. Rainbow soon encountered financial difficulties. Four payments were missed in 1976, taxes became delinquent and substantial unpaid interest accrued.

Meanwhile, the affairs of Kansas Savings became entangled and on February 1, 1977, W. Craig Hutton was appointed trustee by the Kansas Savings & Loan commissioner. Hutton assumed management of Kansas Savings and ordered an audit of the books by an accounting firm which disclosed substantial insolvency whereupon Hutton was appointed receiver in July of 1977. Hutton's appointment as receiver was approved by the District Court of Johnson County and a bond was posted in the amount of $250,000.00. Thereafter, on October 20, 1977, the instant foreclosure action was filed.

In his verified petition, Hutton alleged unpaid principal in the amount of $4,531,016.04, unpaid accrued interest in the amount of $220,218.27 and that the property in question had a probable fair market value of $3,400,000.00 and an estimated gross annual income of $480,000.00. Hutton further alleged that under the terms of the mortgage, Kansas Savings was entitled, without notice, to the appointment of a receiver and the assignment of all rents and income upon the mortgagor's default. He further alleged that defendant is in possession of the property, collecting and retaining the rents and income and that unless a receiver is appointed to collect and conserve such rents, plaintiff will suffer irreparable damage.

Upon the filing of the petition an immediate ex parte hearing was held upon plaintiff's application for the appointment of a receiver. Hutton testified generally in line with the allegations of his petition. He further testified that since the mortgage was executed in 1972 "we have never received a full payment, and as of this date there is $220,218.27 in back interest alone due and owing." Hutton further testified that real estate taxes for two years were delinquent and that because of the makeup of the limited partnership debtors no personal liability could be imposed upon individuals in the event of deficiency on default. At the conclusion of counsel's examination Hutton was further interrogated by the trial court. The trial court noted the provisions of K.S.A. 60-1304 and queried counsel concerning the court's responsibilities and limitations thereunder. After a discussion with counsel concerning the type and amount of a bond and possible conflict of interest with respect to Hutton's appointment as receiver herein, the court announced from the bench:

"I do specifically make the finding here in open court that immediate and irreparable injury is likely to result unless this appointment is made at this time, the nature of which would be that monies would not promptly get to the Kansas Savings & Loan; additional amounts might be siphoned off by those interested in Rainbow Tower during the time that the hearing was pending on the appointment of a receiver; that interest would be lost.   .   .   ."

While, as we have indicated, the provisions of the mortgages pertaining to receivership upon default were before the court no mention thereof was made by the court in its determination.

The day following the ex parte appointment, counsel for Rainbow telephoned the trial judge and expressed objections to the appointment; he was directed by the judge to file appropriate

motions and a hearing was scheduled for November 4, 1977. In response to counsel's call, the court did direct Hutton to retain in a separate account all rents collected from Rainbow tenants.

The main thrust of Rainbow's motion to vacate and its evidence in support thereof was that on December 15, 1976, Rainbow and Kansas Savings entered into a so-called "work-out" agreement negotiated by one of the partners and Robert S. Kerr, then managing officer of Kansas Savings. This agreement radically modified the payments provided for in the original note and mortgage. Rainbow claimed that payments required under this "work-out" agreement had been made or tendered in accordance with the provisions thereof and therefore Rainbow was not now in default. Rainbow further contended that Hutton had wrongfully concealed the "work-out" agreement and payments made or tendered thereunder from the court and therefore the receivership should be vacated and plaintiff estopped by his conduct from seeking such relief.

In response to Rainbow's contentions, plaintiff Hutton testified that he made no mention of the "work-out" agreement simply because he did not consider it a valid and binding agreement and, moreover, even if it were valid it had not been complied with in that payments called for were not paid until time for payment had expired. Hutton further testified that he rejected payments tendered after he had determined the "work-out" agreement was invalid and that such tendered payments were much less than those specified in the mortgage notes. In this connection Hutton testified that he had reason to believe that Robert S. Kerr who signed the "work-out" as managing officer of Kansas Savings had, together with other former officers of Kansas Savings at the time, an ownership interest in the project itself and that Rainbow had made a payment of $20,000.00 to a partnership in the project consisting of a corporation owned by these principals of Kansas Savings. Hutton testified that by reason of this identical ownership and the further fact that Kansas Savings received nothing under the "work-out" that it didn't have a legal right to receive under the original loan documents, he attached little significance to the "work-out" agreement but did find that in any event the terms thereof had not been complied with.

It is well settled in this jurisdiction that the appointment of a receiver, ex parte and without notice, to take over one's property

is a drastic action. *Braun v. Pepper,* 224 Kan. 56, 578 P.2d 695 (1978); *Redfearn v. Bronson Mutual Telephone Co.,* 189 Kan. 105, 367 P.2d 76 (1961). The rule only expresses the clear intent of the controlling statute, K.S.A. 60-1304. The statute limits ex parte appointments to those cases where, after hearing evidence, the judge makes a finding that immediate and irreparable injury is likely to result, and shall set forth the probable nature of such immediate and irreparable injury.

In the instant case, as we have previously indicated, the trial court made the requisite statutory findings. This leaves the question whether there was sufficient evidence before the court to support the findings made. We believe there was. The mortgage note was in substantial default, taxes were delinquent and no tax payments were being made, individual partners in Rainbow had no personal liability and could not be held for any deficiency. Thus, if rents were withheld by Rainbow during the course of foreclosure proceedings, irreparable harm to Kansas Savings would result. Evidence was adduced that several former officers of Kansas Savings wholly owned a corporation that held a partnership interest in Rainbow and that a $20,000.00 unexplained payment had been made to such corporation. While this court has directed the use of extreme caution in the ex parte appointment of receivers (*Braun v. Pepper,* 224 Kan. 56), where a trial court finds that failure to so appoint is likely to result in immediate and irreparable injury and in the exercise of judicial discretion appoints a receiver, appellate courts are not inclined to disturb such exercise of discretion in the absence of abuse thereof. *Geiman-Herthel Furniture Co. v. Geiman,* 160 Kan. 346, 355, 161 P.2d 504 (1945); *Kline v. Orebaugh,* 214 Kan. 207, 519 P.2d 691 (1974). A statement pertinent to the particular facts and circumstances appearing in the case at bar appears in 55 Am. Jur. 2d, Mortgages § 971, p. 837:

"Moreover, if after looking at the situation of the litigating parties, the situation of the property, and the prospects of the future, it should appear to the court that these would be benefited and require the appointment of a receiver, no court could, notwithstanding that it is said to be a matter in its discretion, justly refuse the appointment."

The evidence here concerning the situation of the litigating parties, the situation of the property and cash flow therefrom and the prospects for the future clearly warranted the appointment in

the first instance as well as the court's denial of the motion to vacate.

Finally, Rainbow contends appellee should be barred from the relief requested on the basis of the doctrine of equitable estoppel. The elements of the doctrine have been enumerated in numerous decisions of this court and need not be repeated. See *Place v. Place,* 207 Kan. 734, 486 P.2d 1354 (1971), *Pelischek v. Voshell,* 181 Kan. 712, 313 P.2d 1105 (1957), and cases cited therein. The first and perhaps most important requisite is that there be a false representation or concealment of material facts. It is Rainbow's contention that Hutton's failure to inform the court at the first hearing concerning the "work-out" agreement amounted to concealment of material facts so as to invoke application of the doctrine. Rainbow's contentions in this regard were explored in depth at the hearing to vacate. The trial court was satisfied with Hutton's explanation of his position. Hutton was not fully aware of the circumstances surrounding the "work-out" agreement until he received an audit of the entangled affairs of Kansas Savings in mid-July, 1977. At this time, Hutton determined the agreement was invalid and rejected any of the reduced payments under the agreement that were tendered thereafter. Nothing was concealed from Rainbow, which undoubtedly knew more about the agreement than did Hutton. Hutton testified that he had told Rainbow why he was returning their checks.

We find no abuse of discretion in either of the trial court's rulings, and its judgment is affirmed.

APPROVED BY THE COURT.

FROMME, J., not participating.