In re Roland L. GLESSNER, Esta W. Glessner, Debtors.

Roland L. GLESSNER, Esta W. Glessner, Plaintiffs,

v.

UNION NATIONAL BANK & TRUST COMPANY, Defendant.

Bankruptcy No. 91–40741–11.
Adv. No. 91–7203.

United States Bankruptcy Court,
D. Kansas.

Feb. 4, 1992.

William E. Metcalf, Metcalf and Justus, Topeka, Kan., for plaintiffs-debtors.

John D. Conderman, Arthur, Green, Arthur, Conderman & Stutzman, Manhattan, Kan., for United Nat. Bank & Trust Co.

John Foulston, Wichita, Kan., U.S. Trustee.

## MEMORANDUM OF DECISION

JAMES A. PUSATERI, Bankruptcy Judge.

This proceeding has been submitted to the Court on stipulated facts and briefs. The plaintiff-debtors appear by counsel William E. Metcalf. Union National Bank & Trust Company (Bank) appears by counsel John D. Conderman. The Court has reviewed the relevant pleadings and is ready to rule.

The issue presented is whether the notice of claim to rents as cash collateral which the Bank filed after the debtors filed for bankruptcy was effective under 11 U.S.C.A. § 546(b) to "perfect" the Bank's interest in the rents, so that the post-petition rents produced by the debtors' properties are the Bank's cash collateral.

### FACTS

The parties have stipulated to the following facts. The debtors borrowed money from the Bank at least as early as 1985, and gave the Bank a mortgage on nine pieces of real estate in December of that year. The mortgage, filed with the county register of deeds, contained the following paragraph:

"If any action be brought to foreclose this mortgage, the Court may on motion of the mortgagee, with respect to the condition or value of the mortgage property, appoint a receiver to take immediate possession of the mortgage property, to maintain and lease the same, and to collect the rents and profits arising therefrom during the pendency of such foreclosure. All rent and profit due and owing upon the initiation of foreclosure or thereafter becoming due and owing is hereby assigned by the mortgagor to the mortgagee. All rents and profits collected by the receiver shall be applied first to payment of the costs of management of the mortgage property and collection of rents and profits, including but not limited to, receiver's fees and premiums of receiver's bonds, and then to the sums secured by this mortgage."

In September of 1989, the debtors executed an "Assignment of Rents" which assigned the rents from the properties to the Bank upon their default as defined in the mortgage or a note. This document was filed with the county register of deeds.

In June of 1990, the debtors executed a promissory note in favor of the Bank, pledging the mortgage and assignment of rents as security for the note. They defaulted, and filed for bankruptcy on April 12, 1991. As of that date, they had not paid the 1988, 1989, and 1990 taxes on the

real estate. The Bank had commenced no legal action before the debtors filed for bankruptcy, nor, so far as the record reflects, had it taken steps to collect the rents itself directly from the debtors' tenants. After the filing, the Bank filed a notice of claim to rents as cash collateral under 11 U.S.C.A. § 546(b), and a motion to sequester rents and to determine the rents are cash collateral. The debtors then filed this proceeding, seeking to have the Court determine the extent and validity of the Bank's claimed lien on the post-petition rents.

## CONCLUSIONS OF LAW

This case involves the interaction of a number of sections of the Bankruptcy Code, and the peculiarities of Kansas law concerning mortgages and assignments of rents.[1] The Court must consider both federal and state court decisions as well as the Code in reaching its decision.

### The Bankruptcy Code

■■■■ The Bankruptcy Code restricts the debtors' use of "cash collateral," which is defined to be:

> "cash ... or ... cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title."

*11 U.S.C.A. § 363(a).* Under this provision, the Bank had an interest in the rents from the mortgaged properties, either under the mortgage itself or under the subsequent assignment of rents. However, the debtors-in-possession are empowered to avoid the Bank's lien on the rents if, as of the date they filed for bankruptcy, Kansas law would have allowed a then-existing judicial lien creditor, executing judgment creditor, or bona fide purchaser of the real property to have priority over the Bank's lien. *§ 544(a).* This power is tempered, however, to allow the Bank to "perfect" its

lien postpetition if Kansas has "any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection." *§ 546(b); see also § 362(b)(3) (acts to perfect are not stayed by the automatic stay to the extent avoidance powers are subject to such perfection under § 546(b)).* If the debtors cannot avoid it under § 544(a), the Bank's lien on the rents extends to the post-petition rents "to the extent provided by [the Bank's mortgage or assignment of rents] and by applicable nonbankruptcy law, except to any extent that the court, ... based on the equities of case, orders otherwise." *§ 552(b).* Section 546(b) further provides that if seizure of the property or commencement of an action is required to perfect the interest, a notice to the debtor-in-possession shall be required instead. However, this Court believes such notice is not adequate where something more than mere commencement of a lawsuit is required, for example, where the petition must be followed by a motion with notice and a hearing, and a court ruling. Instead, the commencement of the action must automatically perfect the lien without any order of the court.

As explained below, under Kansas law, the Bank's interest in the debtors' current and past-due rents could be defeated by an executing judgment creditor as of the day the debtors filed for bankruptcy. Therefore, at least in this Court's view, the question under § 546(b) becomes whether any Kansas law would allow the Bank to take some action after that time and retroactively obtain a claim on the rents with priority over such a creditor.

### Tenth Circuit Case

The Bank relies completely on the decision in *Virginia Beach Federal Savings & Loan Association v. Wood,* 901 F.2d 849 (10th Cir.1990) (*per curiam*), to support its claim to the debtors' rents. Applying Oklahoma law, the Circuit ruled that a mortgagee's § 546(b) notice of its claim to rents

---

1. For purposes of this case, those peculiarities do not include the provisions of Senate Bill 81,

1991 Kan.Sess.Laws ch. 161, pp. 1067–68, effective May 23, 1991.

perfected its claim to the rents and the perfection related back to the time of the execution of the mortgage for purposes of § 546(b), but did not relate back for purposes of actual entitlement to recover the rents before the notice. 901 F.2d at 853. This Court has some difficulty understanding how "perfection" can relate back for purposes of § 546(b) when the creditor's entitlement to the rents does not. The legislative history of the section does not seem to contemplate such a result:

"The rights granted to a creditor under this subsection prevail over the trustee only if the transferee has perfected the transfer in accordance with applicable law, and that perfection relates back to a date that is before the commencement of the case.

"... For example, many State laws, under the Uniform Commercial Code, permit perfection of a purchase-money security interest to relate back to defeat an earlier perfected non-purchase-money security interest if the former was perfected within ten days. UCC § 9–301(2). Such perfection would then be able to defeat a hypothetical judicial lien creditor on the date of the filing of the petition. The purpose of the subsection is to protect, in spite of the surprise intervention of bankruptcy petition, those whom State law protects by allowing them to perfect their liens or interests as of an effective date that is earlier than the date of perfection."

H.R.Rep. No. 595, 95th Cong., 1st Sess. 371 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 86 (1978) U.S. Code Cong. & Admin. News 1978, pp. 5787, 5872, 6327 (reprinted in *Norton Bankruptcy Law and Practice: Bankruptcy Code and Related Legislation, Legislative History, Editorial Commentary* at 507 (Clark, Boardman, Callaghan 1991–1992 Ed.)). In this Court's view, this history indicates Congress intended to permit perfection under § 546(b) only when state law allows perfection to relate back *and defeat previous claims to all the property*, not just defeat previous claims to future, unaccrued property. Kansas law, for example, expressly allows such relation-back for purchase money se-

curity interests, K.S.A.*1990 Supp. 84–9–301(2) (perfection relates back if accomplished within 20 days after debtor receives possession of collateral),* for mechanics' and materialmen's liens, K.S.A. *60–1101, –1102, –1105 and 1990 Supp. 60–1103 (perfection relates back to date services or materials first provided if lien statement filed within 3 or 4 months after last provided, depending on relationship to property owner, and action to foreclose filed within one year of statement's filing); In re Birdview Satellite Communications, Inc.,* 90 B.R. 465 (Bankr.D.Kan.1988), and for judgment liens, K.S.A.*1990 Supp. 60–2202 (judgment lien relates back to date petition filed but not more than four months from date judgment entered).* However, while the Court questions this facet of the Circuit's ruling, *Virginia Beach* is not controlling here in any event because the factual situation was different and relevant Kansas law is different than the Oklahoma law applied by the Circuit.

The pertinent facts and law in *Virginia Beach* were these. The mortgagee had filed a foreclosure action and obtained a judgment and order authorizing a sheriff's sale before the debtor filed for bankruptcy and stayed the sale. 901 F.2d at 850. The Circuit indicated there was no dispute the debtors were in default on the mortgage and the property was worth significantly less than the amount owed to the mortgagee. 901 F.2d at 853. An Oklahoma statute gave the mortgagee the right to have a receiver appointed under these circumstances, although the mortgagee did not move for such an appointment because the sale had been set relatively quickly. 901 F.2d at 853. Thus, had the mortgagee simply asked, the court would have appointed a receiver on the mortgagee's motion following some opportunity for notice and a hearing. Although the Circuit did not make it clear in its decision, the Oklahoma statute gave the right to a receiver only in a foreclosure action. *See* 901 F.2d at 851 *(stating the statute was identical to a predecessor the Circuit had construed in an earlier case)* and *Little v. Keaton,* 38 F.2d 457, 461 (10th Cir.), *cert. denied*

282 U.S. 847, 51 S.Ct. 26, 75 L.Ed. 751 (1930) *(the earlier case, where the statute is quoted).* The Circuit had ruled in *Little v. Keaton* that the statute "recognizes the mortgage as creating an equitable lien on the rents pending foreclosure." 38 F.2d at 461. This equitable lien was the interest the Circuit ruled the mortgagee had perfected in *Virginia Beach* by filing its notice under § 546(b). 901 F.2d at 853. The mortgagee had conceded its assignment of rents, conditioned on the mortgagor's future default, was void and unenforceable under the Oklahoma law applicable to the case. 901 F.2d at 851. Strangely, in support of its conclusion the perfection of the equitable lien related back to a prepetition time, the Circuit cited no Oklahoma case law or statute, relying instead on *American Jurisprudence 2d* and bankruptcy court cases applying California and Wisconsin law, and state court cases from Wyoming and Colorado. 901 F.2d at 853. This after declaring, "State law controls the issue of whether a property interest has been perfected. See *Butner [v. United States]*, 440 U.S. [48,] 55, 99 S.Ct. [914,] 918[, 59 L.Ed.2d 136 (1979) ]." 901 F.2d at 852.

As indicated, this case is very different. The Bank had not even commenced a foreclosure action before the debtors filed for bankruptcy, much less obtained a judgment authorizing a sale. While the debtors concede they had defaulted on the note, the Bank has not established that it is undersecured. Furthermore, the Court is unable to locate any Kansas case or statute which indicates a mortgagee gains an equitable lien on rents upon filing a foreclosure petition. Thus, even if the Bank had filed such a suit, it would not have had such a lien to perfect by filing a § 546(b) notice. *See In re Westport–Sandpiper Associates*, 116 B.R. 355, 359 n. 3 (Bankr.D.Conn.1990) *(distinguishing Virginia Beach on this basis).*

Since *Virginia Beach* does not resolve the question presented in this case, the Court must consult Kansas law to deter-mine whether the Bank could have taken any action permissible under § 546(b) which would have perfected its interest in the debtor's rents such that the perfection would relate back to a prepetition time.

*Kansas Law*

■ This Court has held twice previously that under Kansas law, a mortgagee with an assignment of rents is not entitled to receive the rents absent the consent of the mortgagor unless a receiver has been appointed or a court determines that the mortgagee may collect the rents. *In re EES Kansas City Associates*, Case No. 82–40162–11, Adv. No. 82–0108, Memorandum of Decision (Bankr.D.Kan. August 31, 1982); *In re Villa West Associates, L.P.*, Case No. 88–40614–11, Journal Entry (Bankr.D.Kan. August 19, 1988).[2] Here, the mortgage itself gave the right to appointment of a receiver only in a foreclosure suit on the mortgagee's motion. Even where the mortgage provides for appointment of a receiver on default, mortgagees have been required to apply to the courts for the receiver. K.S.A. 60–1304 provides a court may appoint a receiver on a petition or application after notice and an opportunity to be heard unless immediate, irreparable injury is shown to be likely. While some Kansas cases have indicated a mortgage provision for the appointment of a receiver on the mortgagor's default might authorize such a court appointment without any showing beyond the existence of the provision, none have suggested this might be accomplished automatically upon filing a petition without some type of notice and hearing. *Home Owners' Loan Corp. v. Benner*, 150 Kan. 108, 111–12, 91 P.2d 9 (1939); *Hutton v. Rainbow Tower Associates*, 226 Kan. 410, 412, 601 P.2d 665, (1979). In fact, two federal district court judges have recently ruled that Kansas law normally requires a showing of fraud, waste, or irreparable injury to justify the appointment of a receiver, even though the mortgage contained a clause apparently providing for an automatic appointment. *Gage v. First Federal Savings & Loan*

---

**2.** Those cases, like this one, were governed by Kansas law as in effect before May 23, 1991, when Senate Bill 81, 1991 Kan.Sess.Laws ch. 161, pp. 1067–68 became effective.

*Assoc.*, 717 F.Supp. 745, 750–51 (D.Kan. 1989) (Theis, J.); *Balcor Mortgage Investors, Inc., v. Harris*, 1989 WL 89725, *8–*9 (D.Kan.1989) (O'Connor, C.J.).

Similarly, where an assignment of rents is effective only on default, mortgagees have been required to apply to the courts to enforce the assignment. As stated by the Kansas Supreme Court in a case where a foreclosure suit had been filed and the parties agreed to have the rents held by a third party to abide the trial court's decision,

> "Reason and authority lead us to the conclusion that the mortgagee is not entitled to the benefits of the contract for the rents and profits of the land until he has, by appropriate proceedings through the courts, taken the possession and control of such rents and profits. An appropriate remedy is through a receiver. It, however, does not necessarily follow that this is the only remedy. Any proper procedure which would empower the court to control the rents and profits would be sufficient to vest the mortgagee with the title thereto, which must, of course, be applied on the mortgage indebtedness."

*Hall v. Goldsworthy*, 136 Kan. 247, 252, 14 P.2d 659 (1932). The following year, the court held that where the mortgagor consented to have the mortgagee collect the rents as an agent of the court in some garnishment actions, the consent was the equivalent of the judicial proceeding required by *Hall* even though no foreclosure proceeding had been filed and no receiver had been appointed. *Farmers Union Jobbing Ass'n v. Sullivan*, 137 Kan. 196, 19 P.2d 476, *modified in part* 137 Kan. 450, 21 P.2d 303 (1933).

■ The *Farmers Union* case is particularly instructive here because it involved a contest between a mortgagee with an assignment of rents and a judgment creditor, one of the types of creditor referred to in 11 U.S.C.A. § 544(a). The creditor had garnishments served on the mortgagor's tenants on November 1, 1931. 137 Kan. at 197, 19 P.2d 476. On November 23, the mortgagee demanded the rents from the tenants and intervened in the garnishment proceedings. 137 Kan. at 197, 19 P.2d 476 and 137 Kan. 450, 21 P.2d 303. On December 1, the creditor had new garnishments served to obtain rents then due, but no answers were filed because the mortgagee, mortgagor, and creditor made an oral stipulation, reduced to a journal entry signed by their attorneys and by the court, directing the tenants to pay those and future rents to the mortgagee as an agent of the court as if the money had been paid into court in the garnishment proceedings. 137 Kan. at 198, 19 P.2d 476. The court ruled the judgment creditor was entitled to the rents captured by the November 1 garnishments, but the mortgagee was entitled to the later rents due to its November 23 demand plus the mortgagor's immediate consent. 137 Kan. at 199–201, 19 P.2d 476 and 137 Kan. at 450–51, 21 P.2d 303. Thus, under Kansas law, a mortgagee with an assignment of rents cannot retroactively obtain priority over an intervening judgment creditor's attachment of rents even where the mortgagee took action which gave it priority to rents subsequently coming due. Consequently, the Court concludes the rents are not the Bank's cash collateral because its attempted § 546(b) notice was not adequate to perfect its interest in the rents, and the debtors may therefore avoid the lien on the rents under § 544(a), effective at the commencement of the case and prior to the Bank's attempted notice.

■ Once a lien is avoided under § 544, it is preserved for the benefit of the estate by § 551. The unperfected lien does not continually spring back into existence and have to be avoided again. The question under § 544 is who has rights to property as of the date of the bankruptcy filing. If the lien is perfected, the trustee (or debtor-in-possession) loses to it. If the lien is not perfected, the trustee defeats it, and it remains unperfected or unenforceable.

The mortgagee's loss of the ability to attempt to perfect its interest in the debtors' rents once they have filed for bankruptcy does not seem especially egregious

since the mortgagee could obtain them in state court, if at all, only from the time a receiver is appointed until the foreclosure sale is held, when the debtors would regain the right to receive the rents during any redemption period available to them. *See Mid Kansas Fed'l Savings & Loan Ass'n v. Zimmer,* 12 Kan.App.2d 735, 736–42, 755 P.2d 1352 (1988); K.S.A. 60–2414(a) & (p). Furthermore, this right is merely postponed; if the reorganization fails and the mortgagee then forecloses on the property, it may seek to obtain the rents at that time. *See Wright v. Union Central Life Insurance Co.* 304 U.S. 502, 516, 58 S.Ct. 1025, 1033, 82 L.Ed. 1490 (1938) *(holding Congress action under the bankruptcy clause which delays enjoyment of rights while preserving them does not violate due process); Wright v. Vinton Branch,* 300 U.S. 440, 468–70, 57 S.Ct. 556, 564–65, 81 L.Ed. 736 (1937) *(holding bankruptcy statute that permits delay in enforcement of mortgage for three years or more while debtor attempts to obtain composition or extension does not violate due process).*

 In the alternative, assuming this Court's view of the status of the rents in this case is incorrect, the Court would exercise its authority under § 552(b) to cut off the Bank's lien on the rents as being inequitable. As indicated above, the Bank's ability to obtain the rents in a foreclosure proceeding is of limited duration. Should the plan fail, the Bank's lien on the rents could be recognized and effective during a subsequent foreclosure. If the debtors can successfully reorganize, they should be able to use the rents as they always have and pay the Bank through reamortization. In this situation, the Bank will have lost during the bankruptcy at most the use of the money it might have obtained by selling the property, and this only to the extent it is undersecured. Section 506 provides for interest to be paid to creditors to the extent they are oversecured. Pre-bankruptcy, the Bank was entitled only to be paid principal plus interest, and after a successful reorganization, it will be paid principal plus interest. It is not entitled to be paid for interest lost or the loss of the use of its collateral during the bankruptcy

unless it is oversecured. *United States Savings Assoc. v. Timbers of Inwood Forest Assoc.,* 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988).

■ Nevertheless, the Court believes the unsecured creditors are entitled to some protection of their interest in the postpetition rents. The debtors will be required to sequester the rents in a separate account and may use them without prior notice only for the ordinary and necessary expenses of operating their business. They must give notice and an opportunity for hearing on major expenses that would usually be capitalized. The debtors may project the use of the rents in their reorganization plan, and use them accordingly if their plan is confirmed.

For the reasons stated, the Court concludes the postpetition rents are not the Bank's cash collateral, but will order the rents to be treated as stated above.

The foregoing constitutes Findings of Fact and Conclusions of Law under Rule 7052 of the Federal Rules of Bankruptcy Procedure and Rule 52(a) of the Federal Rules of Civil Procedure.