In re **WISTON XXIV LIMITED PARTNERSHIP.**

**BALCOR PENSION INVESTORS V, Plaintiff/Appellant,**

v.

**WISTON XXIV LIMITED PARTNERSHIP, Defendant/Appellee.**

Civ. A. No. 92–CV–4096–DES.

Bankruptcy No. 91–40410–11.

United States District Court, D. Kansas.

Nov. 12, 1992.

William H. Zimmerman, Jr., Royce E. Wallace, Wallace & Zimmerman, Wichita, Kan., for Wiston XXIV Ltd. Partnership.

Jonathan A. Margolies, McDowell, Rice & Smith, P.C., Kansas City, Mo., Steven R. Rebein, McDowell, Rice & Smith, P.C., Kansas City, Kan., James C. Murray, Katten, Muchin & Zavis, Chicago, Ill., for Balcor Pension Investors V.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on the appeal taken by Balcor Pension Investors V ("Balcor") from an order of the Bankruptcy Court for the District of Kansas. The bankruptcy court denied Balcor's claim that post-petition rents accruing to the debtor, Wiston XXIV Limited Partnership ("Wiston") constitute cash collateral pursuant to 11 U.S.C. § 363(a) and that Balcor's interest in the rents withstands the bankruptcy trustee's avoiding powers.[1]

### Facts

Wiston is a Kansas limited partnership. Its primary asset is an apartment complex located in Overland Park, Kansas, known as Villa Medici Apartments. Balcor, an Illinois limited partnership, loaned Wiston $10,850,000 on November 23, 1987, in exchange for Wiston's Secured Promissory Note, Mortgage and Security Agreement, and Assignment of Leases and Rents. Both the mortgage and the assignment were recorded with the Johnson County Register of Deeds on November 30, 1987.[2]

Three years later, in December 1990, Wiston defaulted on the note. On February 19, 1991, Balcor accelerated the outstanding balance on the note, terminated Wiston's contractual right to use the rents generated by the apartment complex, declared that all rents were to be held in trust for Balcor, and demanded payment to Balcor of all rents then in Wiston's possession or thereafter received by Wiston.

On March 1, 1991, Wiston filed a voluntary petition under Chapter 11 of the Bankruptcy Code. Wiston remained in possession of the apartment complex and other assets of the bankruptcy estate, subject to the bankruptcy court's approval of its operating budgets. On the same day the petition was filed, Wiston also filed a Motion for Order Authorizing Use of Cash Collateral, seeking authority to use rental income from the apartment complex for its ongoing operating expenses. Balcor immediately filed a motion to segregate and sequester rents pursuant to 11 U.S.C. § 363(c)(4) and § 546(b), claiming a perfected senior lien in the rents and giving notice of its claim that the rents constituted its cash collateral. On April 2, 1991, the bankruptcy court ordered Wiston to make a monthly accounting of all operating expenditures to Balcor, and ordered segregation of all rents generated by the property in excess of the court-approved operating budget, prohibit-

---

1. Balcor has filed a motion for expedited disposition of this appeal, alleging potentially irreparable harm if Wiston is permitted to dissipate accumulated rental income and rents accrued in the future. The basis of Balcor's motion to expedite was Wiston's proposed reorganization plan, under which some of the accumulated rental income allegedly would have been used by Wiston to pay other creditors. Because the bankruptcy court has subsequently denied confirmation of that plan, and Balcor has been granted partial relief from the automatic stay in order to institute foreclosure proceedings, the court by this order denies the motion to expedite disposition of this appeal (Doc. 8).

   Further, Balcor's request for oral argument is denied pursuant to Bankruptcy Rule 8012, inasmuch as the court has determined that the facts and legal arguments are adequately presented in the briefs and the record, and the decisional process would not be significantly aided by oral argument. See D.Kan. Rule 710(a)(7).

2. Balcor's claimed security interest in the rents is not subject to K.S.A. 84–9–101 et seq., the Kansas version of Article 9 of the Uniform Commercial Code. See K.S.A. 84–9–104(j).

ing the debtor from using such funds except by order of the court. Wiston subsequently submitted proposed operating budgets to the bankruptcy court for approval, to which Balcor filed objections.

On November 8, 1991, Balcor filed a motion for relief from the automatic stay imposed by 11 U.S.C. § 362. Balcor also claimed it held a perfected security interest in the post-petition rent income from the apartment complex notwithstanding the filing of the bankruptcy petition. A hearing on Balcor's motion for relief from stay was held on January 23, 1992.[3]

In an order dated April 21, 1992, the bankruptcy court held that the security interest in rents was not perfected as of March 1, 1991, the date the bankruptcy petition was filed, and hence Balcor's security interest in the post-petition rents was subject to the avoiding powers of the bankruptcy trustee under 11 U.S.C. § 544(a)(2). The court also concluded that the rents were not Balcor's cash collateral. *See In re Wiston XXIV Limited Partnership*, 141 B.R. 429, 432 (Bankr.D.Kan.1992). Balcor appeals from this interlocutory order.

### Jurisdiction

■ Wiston argues that this appeal is premature since the order of the bankruptcy court was not stayed pursuant to Bankruptcy Rule 8005, and the bankruptcy proceeding has not terminated. However, a Rule 8005 stay is discretionary, and is not a prerequisite to an appeal. Further, 28 U.S.C. § 158(a) grants the district court jurisdiction to hear appeals from interlocutory orders of bankruptcy judges with leave of the court.

Apparently on the assumption that the order appealed was a final order,[4] Balcor filed a timely notice of appeal pursuant to Bankruptcy Rule 8001(a) and 8002(a), without an accompanying motion for leave to appeal as required by Rule 8001(b) for in-

terlocutory orders. Because the bankruptcy court's order from which Balcor appeals did not resolve all of Balcor's adversary claims to the bankruptcy estate, particularly the primary contested issue of whether Balcor was entitled to relief from the automatic stay, this court finds that it is not a final order appealable as of right. *See, e.g., In re Durability, Inc.*, 893 F.2d 264, 266 (10th Cir.1990) (appropriate "judicial unit" for finality purposes in bankruptcy is the particular adversary proceeding or discrete controversy); *In re Louisiana World Exposition, Inc.*, 832 F.2d 1391, 1396 (5th Cir.1987) (each adversary proceeding and contested matter should be considered a separate judicial unit for purposes of determining finality) (quoting 1 Collier on Bankruptcy 3.03, at 3–157 (L. King 15th ed. 1987)).

■ Although D.Kan.Rule 710(a)(2) provides that leave to appeal interlocutory orders is to be sought by filing an application for leave to appeal, subsection (a)(4) provides that the timely filing of a notice of appeal shall be deemed a timely and proper application for leave to appeal. *See also* Bankruptcy Rule 8003(c). The record on appeal includes each of the items required by Rule 710(a)(2) for an application for leave to appeal. The court also finds that the issue presented in this appeal is a significant question of law in the bankruptcy context, which has not been considered at the appellate level on the basis of property rights under Kansas law. The court therefore deems the timely notice of appeal a proper application for leave to appeal, and by this order the court grants Balcor leave to appeal.

### Scope of Appellate Review

Since the order of the bankruptcy court determined an issue of law on undisputed facts, review by this court is *de novo*. *See, e.g., Virginia Beach Federal Savings and*

---

**3.** Subsequent to the filing of this appeal, the bankruptcy court granted Balcor partial relief from the stay, permitting the institution of foreclosure proceedings in state court subject to limitations imposed by the bankruptcy court.

**4.** Although Wiston contends that this matter should be remanded to the bankruptcy court pending conclusion of the bankruptcy proceedings, in its brief Wiston explicitly accepted Balcor's statements of appellate jurisdiction, which cited 28 U.S.C. § 158(a) and referenced the appealed decision as a "final order."

*Loan Ass'n v. Wood,* 901 F.2d 849, 851 (10th Cir.1990).

### Analysis

■ In a bankruptcy proceeding, property interests are determined on the basis of state law. *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). State law varies considerably with regard to the perfection of a mortgagee's interest in rents and the permissible methods by which such an interest may be perfected while the automatic stay of bankruptcy is in effect. *See, e.g., United States v. Landmark Park & Associates,* 795 F.2d 683, 686 (8th Cir.1986), and cases cited therein. Because the real property at issue in this case is located in Kansas, the law of Kansas applies to determine the property rights of Balcor to the rents generated by the mortgaged property. *Butner,* 440 U.S. at 54, 99 S.Ct. at 918.

■ In Kansas, a mortgage is not a conveyance; a mortgagee acquires only a lien securing the mortgagor's indebtedness. *See Mid–Continent Supply Co. v. Hauser,* 176 Kan. 9, 269 P.2d 453, 457 (1954); *Hall v. Goldsworthy,* 136 Kan. 247, 14 P.2d 659, 660 (1932); *Missouri Valley Investment Co. v. Curtis,* 12 Kan.App.2d 386, 745 P.2d 683, 685 (1987); K.S.A. 58–2301. A mortgagor is entitled to use and possession of the premises, together with income generated from the property, until his right is divested by appropriate judicial proceedings, or at least until a receiver is appointed to take possession after foreclosure proceedings begin. *Caldwell v. Alsop,* 48 Kan. 571, 573, 29 P. 1150, 1151 (1892), *quoted in Hall v. Goldsworthy,* 14 P.2d at 661; *see Mid–Continent Supply Co.,* 269 P.2d at 458 (where mortgages contained no assignment of rents and profits, mortgagor remained entitled to rents and profits so long as he retains possession; but if receiver appointed following foreclosure, receiver takes possession of rents and profits to be held for benefit of parties in interest). The "lien theory" of the mortgage relationship, followed in Kansas, is the majority rule in the United States. Randolph, *The Mortgagee's Interest in Rents: Some Policy Considerations and Proposals,* 29 Kan. L.Rev. 1, 14 (1980) [hereinafter "Randolph"].

■ Under Kansas law, an assignment of rents to secure payment of a mortgage debt is deemed part of the mortgage, and is enforceable only in accordance with the law relating to the foreclosure of mortgages. *Hall v. Goldsworthy,* 14 P.2d at 661; *cf. First Federal Savings and Loan Ass'n v. Moulds,* 202 Kan. 557, 451 P.2d 215, 219 (1969) (right to possession and to rents and profits of property being foreclosed is in defendant owner and except for waste, is absolute); *Capitol Building and Loan Ass'n v. Ross,* 134 Kan. 441, 7 P.2d 86, 87 (1932) (mortgagor's right to possession of property during redemption period includes right to rents and profits, which cannot be waived by any provision of the mortgage); *Mid Kansas Federal Savings and Loan Ass'n v. Zimmer,* 12 Kan.App.2d 735, 755 P.2d 1352, 1355 (1988) (separate assignment of rents, executed at same time as note and mortgage, is subject to statute prohibiting waiver of redemption in any mortgage instrument).

■ Although the assignment creates a lien or security interest in favor of the assignee just as a mortgage creates a lien on behalf of the mortgagee, under Kansas caselaw the assignee is "entitled to the benefit of the contract" only after he takes action in court to reduce the rents to his possession or control. *Hall v. Goldsworthy,* 14 P.2d at 661. "Any proper procedure which would empower the court to control the rents and profits would be sufficient to vest the mortgagee with the title thereto ...," including appointment of a receiver. *Id.* at 661–62; *see also Holton Building and Loan Ass'n v. Gibson,* 139 Kan. 829, Syl. ¶, 33 P.2d 138 (1934) (right to benefit of rent assignment does not accrue until such rents have been subjected to possession of mortgagee by proper action in courts). While the assignee must take court action or the equivalent to obtain *title* to the rents, thereby divesting the assignor of his entire interest therein, the court is unaware of any Kansas case that requires the assignee to take court action

in order to perfect a security interest in rents.

In this court's view, the court procedure envisioned in *Hall* necessary to "entitle" the assignee to rents is analogous to the state foreclosure proceeding that is the prerequisite to enforcing the mortgagee's interest in the real property. The mortgagee/assignee has a property right in the realty and rents whether or not he has taken action to "foreclose" his property right by any "proper procedure" as described in *Hall.* *See In re Foxhill Place Associates,* 119 B.R. 708, 712 (Bankr. W.D.Mo.1990) (applying Kansas law) (enforcement of creditor's rights in rents describes the process taken to realize or possess the rent revenues and is distinct from the process of perfecting the security interest).

■ Applying Kansas law to the facts of this case, Balcor held a security interest in the rents prior to the filing of the bankruptcy petition by virtue of the assignment of rents granted in conjunction with the mortgage in 1987. Kansas law does not require court action such as appointment of a receiver in order to *create* a security interest in rents assigned by the mortgagor; the agreement between the parties creates the security interest. *See Hall v. Goldsworthy,* 14 P.2d at 661; *cf. Cates v. Musgrove Petroleum Corp.,* 190 Kan. 609, 376 P.2d 819, 821 (1962) (appointment of receiver does not determine any rights nor destroy any liens; receiver merely becomes assignee of insolvent, and takes possession subject to all valid liens existing upon the property at time of appointment), *cited in Maxl Sales Co. v. Critiques, Inc.,* 796 F.2d 1293, 1297 n. 2 (10th Cir.1986). Although the assignment granted Wiston a limited right to use the rents, Balcor expressly terminated that right pursuant to the de-

mand letter issued on February 19, 1991. This court construes the demand letter as Balcor's initial step in enforcing its security interest in the rents, but it was not sufficient to comply with the requirements of Kansas caselaw in order to take constructive possession of the rents before the filing of the petition in this case.[5] Consequently, the court finds that Balcor is not entitled to possession of the rents unless and until it takes action to empower the state court to control the rents and profits, such as by appointment of a receiver.

■ Nevertheless, at the time the bankruptcy petition was filed on March 1, 1991, Balcor certainly held an interest in the rental income by virtue of the assignment and demand, even though it had not instituted any court proceeding to divest Wiston of its rights to the rental income. Although in effect the assignment was initially conditioned upon the mortgagor's default since it granted Wiston a license to collect and use the rents absent default, it became unconditional on February 19, 1991, when Balcor terminated Wiston's license to use the rents. *See Army Nat'l Bank v. Equity Developers, Inc.,* 245 Kan. 3, 774 P.2d 919, 932 (1989) (" 'assignment passes all of the assignor's title and interest to assignee, and divests assignor of all right of control over the subject matter of the assignment' ") (quoting *Patrons State Bank & Trust Co. v. Shapiro,* 215 Kan. 856, 861, 528 P.2d 1198 (1974)). It follows that the prepetition rents constitute "cash collateral" as defined by 11 U.S.C. § 363(a), which reads:

(a) In this section, "cash collateral" means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an in-

---

5. The demand letter cannot be characterized as a court proceeding divesting Wiston of the right to the rents. Nor in this case was there any agreement between the parties to permit the mortgagee to collect the rents as agent of the court, which has been held equivalent to a judicial proceeding to acquire possession of the rents. *See Farmer's Union Jobbing Ass'n v. Sullivan,* 137 Kan. 196, 19 P.2d 476, *modified on*

*petition for rehearing,* 137 Kan. 450, 21 P.2d 303 (1933).

The court notes that Balcor did not send notices to Wiston's lessees directing them to make rent payments to Balcor, although it had the right to do so under the assignment. Instead, Balcor's demand letter asked Wiston to direct the lessees to make payments directly to Balcor. Wiston apparently declined to do so.

terest and includes the proceeds, products, offspring, rents or profits of property subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

The specific issue in this appeal, however, is whether rents accruing *after* the filing of the petition constitute "cash collateral." As a general rule, property acquired by the bankruptcy estate or by the debtor after the commencement of the case is *not* subject to any lien resulting from any security agreement entered into by the debtor before the filing of the petition. 11 U.S.C. § 552(a). However, § 552(b) carves out an important exception to the general rule. Subject to several other provisions of the Bankruptcy Code, if a preexisting security agreement between the debtor and a secured party grants a security interest in property acquired pre-petition and to rents or profits of that property, then the security interest extends to such rents and proceeds acquired post-petition to the extent provided by such security agreement and by applicable non-bankruptcy law.[6] 11 U.S.C. § 552(b); *see* Randolph, *supra,* at 45 (interpreting § 552(b)). Hence, Kansas law determines whether the Balcor's security interest in Wiston's apartment complex extends to post-petition rental income from the complex.[7] If so, Balcor's security interest created by the assignment of rents extends to rents accruing post-petition,

which would therefore fall within the definition of "cash collateral."

▮▮▮ Under Kansas law, an assignment of rents as security for a mortgagee is valid as to rents accruing after default and before the beginning of the statutory redemption period. *See Holton Building & Loan Ass'n v. Gibson,* 139 Kan. 829, Syl. ¶, 33 P.2d 138 (1934); *Missouri Valley Investment Co. v. Curtis,* 12 Kan.App.2d 386, 745 P.2d 683, 686 (1987) (citing *Hall v. Goldsworthy* ). Therefore, Balcor's security interest extends to rental income from the mortgaged property that accrues post-petition, until the beginning of the statutory redemption period, if any.

The exception embodied in 11 U.S.C. § 552(b) as to after-acquired property, however, is expressly subject to the avoiding powers of the bankruptcy trustee as set forth in § 544. Under § 544, the bankruptcy trustee or debtor-in-possession may set aside any security interest not perfected prior to the filing of the bankruptcy petition, and state law determines whether and when the interest has been perfected. *See Virginia Beach Federal Savings and Loan Ass'n v. Wood,* 901 F.2d 849, 852 (10th Cir.1990); *In re Casbeer,* 793 F.2d 1436, 1440 (5th Cir.1986) (citing *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979)).

▮▮▮ Under Kansas law, a security interest in rents is perfected[8] by recording the assignment of rents with the recorder of deeds.[9] *In re Foxhill Place Associates,*

---

6. The exception in § 552(b) is subject to the equitable power of the bankruptcy court to order otherwise after notice and a hearing, "based on the equities of the case." The bankruptcy court in this case did not explicitly invoke this power, although it did so as an alternative holding in *In re Glessner,* 140 B.R. 556, 562 (Bankr. D.Kan.1992), upon which the bankruptcy court in this case heavily relied.

7. The Assignment of Leases and Rents in this case unquestionably extends Balcor's security interest to rents accruing to Wiston in the future, including the period of redemption, if any.

8. This court agrees with the statement in *Foxhill Place Associates* that there is a dearth of Kansas caselaw on this specific point. *See id.* at 712 n. 2. Nevertheless, the federal court must determine how state courts would dispose of the issue on the basis of Kansas property law. *See*

*Butner v. United States,* 440 U.S. at 56, 58, 99 S.Ct. at 918–19, 919 (state property law defines the security interest of the mortgagee in rents; federal judges may appropriately determine how local courts would dispose of such issues).

9. The court reaches this conclusion without relying upon K.S.A. 1991 Supp. 58–2343, which became effective May 23, 1991, following the filing of the bankruptcy petition in this case. The court does not agree with Balcor's argument that this statute applies to this case. The controlling date for purposes of determining the respective property rights of the parties was March 1, 1991, when the petition was filed. Under Kansas law, a newly enacted substantive statute applies only prospectively unless the legislature expressly provides that it is to apply retrospectively. *See, e.g., Stevenson v. City Council,* 245 Kan. 425, 781 P.2d 689 (1989). To

119 B.R. at 712 (citing *In re Cherry Creek,* No. 89–10481, slip op. at 10 (Bankr.D.Kan. 1990) (unpublished) and *Federal Home Loan Mortgage Corp. v. Nazar,* 100 B.R. 555, 558 (D.Kan.1989) (applying federal rule applicable to federal lenders)); *cf. Army Nat'l Bank v. Equity Developers, Inc.,* 245 Kan. 3, 774 P.2d 919, 928 (1989) (recording statutes were intended to protect mortgagor and those dealing with the underlying land); *National Bank of Tulsa v. Warren,* 177 Kan. 281, 279 P.2d 262, 265 (1955) (assignment to lender of production payments from oil and gas leases as security for loan was a conveyance of interest in land, amounting to a mortgage). Under the recording statutes, "[e]very instrument in writing … whereby any real estate may be affected, … may be recorded in the office of register of deeds…." K.S.A. 58–2221. Every such instrument so recorded is deemed to impart notice to all persons of the contents, and all subsequent purchasers are deemed to purchase with notice. K.S.A. 58–2222, 58–2223. Since Balcor recorded the assignment with the Johnson County Register of Deeds in November 1987, this court finds that the security interest in rents was properly perfected well before the filing of Wiston's bankruptcy petition.[10] Therefore, under 11 U.S.C.

---

the extent that subsection (b) of K.S.A. 58–2343 affects the respective property rights of those claiming interests in rents, it affects substantive rights. The statute does not provide for retrospective application. The court therefore agrees with the bankruptcy court that K.S.A. 1991 Supp. 58–2343 is inapplicable to this case. *Compare In re McCutchen,* 115 B.R. 126, 132 (Bankr.W.D.Tenn.1990) (similar statutory amendment applied retrospectively where its effective date was prior to bankruptcy petition and no interests would be adversely affected by retroactive application).

10. Consequently the court need not address the appellant's alternative argument that the security interest was perfected by the filing of its post-petition motion to sequester the rents, which Balcor argues related back to a time prior to the filing of the petition in bankruptcy. Further, 11 U.S.C. § 546(b) is inapplicable to the extent that it permits the perfection of certain security interests to relate back to defeat the strong-arm powers of the trustee under § 544.

Also inapplicable to this court's analysis is *Farmers Union Jobbing Ass'n v. Sullivan,* 137 Kan. 196, 19 P.2d 476, *modified on rehearing,* 137 Kan. 450, 21 P.2d 303 (1933), upon which the bankruptcy court heavily relied. The plaintiff in that case had obtained a personal judgment against Sullivan on which an execution had been returned unsatisfied. The plaintiff then served a garnishment summons on the defendant's tenants, who rented real estate from the defendant. Service of the garnishment summons established a lien in favor of the garnishor as to the rents. However, five years earlier, Sullivan had mortgaged the real estate to the intervening building and loan association, along with a conditional assignment of rents as further security to the intervening mortgagee, who claimed the rents. The mortgagee did not, however, make its demand for the rents until *after* the garnishment summons was issued, and hence the assignment in favor of the mortgagee was not complete until after the garnishment proceedings were instituted. After the mortgagee made its demand, the three parties entered into an agreement that the tenants would pay the rent to the intervening mortgagee as agent for the court pending final disposition of the garnishment proceedings. The district court held in favor of the mortgagee, and the Kansas Supreme Court affirmed, reasoning that the agreement among the parties after a court action was commenced was equivalent to a judicial proceeding to dispossess the mortgagor of the rents, thereby entitling the mortgagee to the rents on the basis of the prior assignment as of the date of the demand. 19 P.2d at 478. The court on rehearing held that the garnishor was entitled to the rents accruing after the garnishment summons was issued but prior to the mortgagee's demand. 21 P.2d 303–04.

This case is distinguishable from *Farmer's Union* in a number of respects. First, Balcor's demand was made prior to the filing of the bankruptcy petition, while the intervenor's demand was made after the initial garnishment summons in *Farmer's Union.* Second, contrary to appellee's brief, *Farmer's Union* does not indicate whether the mortgagee had recorded its assignment as did Balcor. Finally, Balcor and Wiston have not entered into an agreement to allow payment of the rents to Balcor pending disposition of the court proceedings as did the parties in *Farmer's Union.* Nevertheless, *Farmer's Union* is persuasive to the extent that it recognized the mortgagee's security interest in the rents as of the date of the demand, which was determined to have priority over that of the garnishor based on the summons issued after the demand. 21 P.2d at 304. The court notes that the bankruptcy court's analysis and interpretation of *Farmer's Union* confuses the concepts of lien attachment, lien perfection, and lien enforcement. In this case, Balcor's security interest in the rents was perfected as of the date the assignment was recorded, and it attached no later than February 19, 1991, when Balcor issued its demand letter and terminated Wiston's right to use the rents. While Balcor may be required to take court action to enforce its lien

§ 544(a), the bankruptcy trustee's rights are subject to Balcor's interest in the rents, which was perfected by recording in 1987.

Balcor's security interest in postpetition rents under § 552(b) is therefore protected against the strong-arm powers of the trustee and the debtor-in-possession under § 544(a). However, the exception set forth in § 552(b) is also subject to § 363, which defines "cash collateral" and prohibits the trustee or debtor-in-possession from using cash collateral except upon agreement of the entity holding an interest therein or upon authorization of the court following notice and a hearing. *See* 11 U.S.C. § 363(a), (c)(2). In this case, Balcor has not agreed to permit the use of rents by the trustee or Wiston, the debtor-in-possession.

Contrary to the holding of the bankruptcy court below, the court finds that the definition of "cash collateral" in 11 U.S.C. § 363(a) covers the post-petition rents in this case. Having determined that Balcor held a perfected security interest in the real property prior to the filing of the petition, the rents derived from the property constitute "cash collateral" under § 363. *See supra* pp. 580–81 (quoting § 363(a)).

The Bankruptcy Code imposes limitations on the use of cash collateral in § 363(c)(2), which reads as follows:

> (2) The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless—
>
> (A) each entity that has an interest in such cash collateral consents; or
>
> (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

Since Balcor did not consent to Wiston's use of the rents, the only remaining question is whether the Bankruptcy Court's disposition of the rents complied with § 363(c)(2)(B).

Following notice and a hearing held March 14, 1991, the bankruptcy court permitted Wiston, as debtor-in-possession, to use the rents for court-approved operating costs of the apartment complex, and ordered sequestration of any excess rent income. In subsequent orders, the bankruptcy court has apparently continued to permit Wiston use of the rents to the extent of the reasonable and necessary operating expenses of the real property. The reasoning underlying the bankruptcy court's orders appears to be consistent with the purpose of Chapter 11 bankruptcy proceedings to enable the debtor an opportunity to reorganize and pay off its debts. *See, e.g., Matter of Winshall Settlor's Trust,* 758 F.2d 1136, 1137 (6th Cir.1985). It is also consistent with Kansas law favoring the equitable right of redemption, during which period the debtor has a right to possession of the real estate as well as the rents generated by the property. *See, e.g., Capitol Building and Loan Ass'n v. Ross,* 134 Kan. 441, 7 P.2d 86, 87 (1932). However, because the bankruptcy court erroneously determined that Balcor did not hold a perfected interest as of the date the bankruptcy petition was filed and that the rents in this case did not constitute "cash collateral," it did not reach Balcor's contention that adequate protection had not been afforded the cash collateral as required by § 363.[11] This court therefore remands this matter to the bankruptcy court for further proceedings consistent with this memorandum and order.[12]

and take possession of the rents, the lien was nevertheless perfected prior to the filing of the petition in bankruptcy, thereby withstanding the avoiding powers of the trustee under § 544(a).

**11.** Nor did the bankruptcy court reach Balcor's argument that it is entitled to possession of post-petition rents by virtue of its motion to sequester rents filed on March 4, 1991. Hence the issue of whether Balcor has a right to enforce its perfected security interest during the pendency of bankruptcy proceedings is not before this court for review. Further, since this court has determined that Balcor holds a perfected securi-

ty interest in the rents, its argument that the bankruptcy court's order constitutes an unconstitutional taking of Balcor's security interest is moot.

**12.** In reaching its decision, the bankruptcy court relied heavily upon its recent decision in *In re Glessner,* 140 B.R. 556 (Bankr.D.Kan.1992). An appeal in *Glessner* is presently pending in this court. The stipulated facts in *Glessner* do not indicate that the mortgagee issued a demand prior to the date the bankruptcy petition was filed. Because *Glessner* is not necessarily

IT IS BY THE COURT THEREFORE ORDERED that the appellant is granted leave to appeal.

IT IS FURTHER ORDERED that the appellant's motion to expedite the appeal (Doc. 8) is hereby denied.

IT IS FURTHER ORDERED that the holding of the bankruptcy court that appellant's interest in the rents was not perfected as of the date the bankruptcy proceeding was commenced and that the rents therefore do not constitute cash collateral is hereby reversed, and the matter is remanded to the bankruptcy court for further proceedings consistent with this memorandum and order.

on all fours with this case, the decision in this appeal should not be interpreted as necessarily conclusive with regard to the pending *Glessner* appeal.