**In re GASLIGHT VILLAGE, INC. (also doing business as Villa Sol D'or Apartments), Debtor.**

**Bankruptcy No. 5–79–00838.**

United States Bankruptcy Court, D. Connecticut.

Nov. 7, 1980.

Thomas F. McDermott, Jr., Waterbury, Conn., for debtor.

Hoberman, Pollack & Roseman, P. C., Hartford, Conn., for plaintiffs; Howard L. Siegel, Hartford, Conn., of counsel.

DECISION ON APPLICATION FOR SUMMARY JUDGMENT IN AN ADVERSARY PROCEEDING IN WHICH THE PLAINTIFFS, AS MORTGAGEES, SEEK RELIEF FROM AUTOMATIC STAY

HOWARD SCHWARTZBERG, Bankruptcy Judge.[*]

The debtor–in–possession in the above–captioned case has moved for summary judgment in an adversary proceeding in which the plaintiffs, as mortgagees, seek relief from the automatic stay under Code § 362, so as to enforce their rights under an assignment of leases upon the property in question. The debtor–in–possession reasons that since this court previously ruled that the mortgagees should not then be permitted to foreclose upon their mortgage, it necessarily follows that the efficacy of Code § 362 continues to serve as a protective umbrella for the debtor enabling it to con-

[*] U.S.B.J., Southern District of New York, sitting by designation of the Chief Judge, United States Court of Appeals, Second Circuit.

tinue to receive the fruit from the tree without plowing back any of the rent proceeds for the benefit of the mortgagees in their capacity as assignees of the leases.

## FACTS

On November 26, 1979, the debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101 et seq. and was continued in possession in accordance with Code § 1107.

The plaintiffs are the holders of a mortgage and conditional assignment of leases with respect to the debtor's property in the Town of Waterbury, County of New Haven, State of Connecticut. On or about February 13, 1976, the debtor, Gaslight Village, Inc., purchased the property in question and executed and delivered to the plaintiffs, as part of the transaction, a promissory note in the amount of $221,875.67, secured by a mortgage and an assignment of leases. The property in question was improved by the presence of a shopping center and various business tenants who paid rental income to the debtor. In addition to the plaintiffs' mortgage, the property is also encumbered by two senior mortgages which, when added to plaintiffs' mortgage, result in a total secured indebtedness of approximately $594,000. There is also a lien on the property for unpaid real property taxes to the City of Waterbury.

After the debtor commenced the Chapter 11 case, the plaintiffs filed a complaint seeking relief from the automatic stay authorized under Code § 362 in order to continue their state court foreclosure action, in which a receiver had been appointed. In an opinion dated August 18, 1980, Bankruptcy Judge Trevethan found that the property in question was worth at least $818,000, resulting in an equity of $224,000, if based on total liens of $593,906.89, and an equity of $155,000, if the aggregate liens were $662,-139.89, as plaintiffs' contended. Thus, in concluding that the plaintiffs failed to sustain the burden of proving that the debtor had no equity in the property the Court went on to state:

"However, it must be observed that the economics of the property will not remain static. There might be an increase in gross rental income or a decrease in expenses which will increase the amount of net income available for reduction of the liens to afford improvement of the plaintiffs' secured position. On the other hand the intrusion in the future of circumstances which will reduce the amount of income available for application on the lien claims, such as decrease in rentals or increase in operating expenses, can result in so imperiling the present protection afforded the plaintiffs' lien as to entitle them to proceed with the foreclosure. Finally, continuance of the stay is but a temporary circumstances to give the defendant the opportunity to proceed with all due speed to achieve a solution to its lien problems and accomplish a reorganization of its financial affairs. It will benefit neither the debtor nor its creditors to prolong a stay of action if the result is to be no financial rehabilitation of the debtor and no restructuring of its indebtedness."

In accordance with the foregoing conclusion, the Court entered an order on August 18, 1980:

" . . . denying to the plaintiffs present relief from the stay, but without prejudice to the plaintiffs' renewal of their request for relief if circumstances develop which warrant relief within the framework of what was propounded in the memorandum of decision."

The debtor urges in support of its motion for summary judgment that the plaintiffs' request for relief, although directed to the retail income from the secured property, stands in contradiction to the Court's prior determination that the "equity alone presently affords the plaintiffs adequate protection for their lien interest in the property without now requiring any additional protection consistent with 11 U.S.C. § 361." Accordingly, the debtor argues that the plaintiffs have failed to allege the existence of any change in circumstances since the Court's prior determination. The debtor

874

states that it continues to make payments to lienholders in the same order of priority as such payments had been made by the state court receiver prior to the commencement of the Chapter 11 case.

The plaintiffs contend that no payments have been made to them in accordance with their assignment of rental income and that meanwhile a substantial payment is made each month to creditors who have no security in the rentals. Hence, they maintain that the protection afforded them by reason of their assignment of rentals is being lost.

The parties have stipulated that the automatic stay imposed by 11 U.S.C. § 362(a) shall remain in full force and effect until such time as the Court renders a final determination of the issue now before the Court.

## DISCUSSION

■■■ Pursuant to an "Assignment of Lease" the debtor assigned all rental income under the leases on the property to the plaintiffs, as security for the debtor's obligations under their mortgage. The rental payments were to be held in trust by the debtor. In the event of a default by the debtor of any obligations secured by the mortgage, the rental payments received by the debtor were to be paid to the plaintiffs. Generally, a mortgagee is not entitled to the rents from the mortgaged premises until the mortgagee takes actual possession, or until actual possession is taken for the mortgagee by a court–appointed receiver. *Freedman's Saving Co. v. Shepherd*, 127 U.S. 492, 502, 8 S.Ct. 1250, 1254, 32 L.Ed. 163 (1888). Whether or not an assignment of rents to a mortgagee is an actual assignment, or merely a security device in the event of default, is not a matter of bankruptcy law; it involves a determination of what rights the mortgagee would have under state law. *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). In this case the plaintiffs, as mortgagees have taken affirmative action to secure their right to rental income from the property by having caused the appointment of a state court receiver in their prepetition

foreclosure litigation for the purpose of collecting the rent. Thus, before the commencement of this Chapter 11 case, the plaintiffs established their priority to the rental income from the property in question, with the result that such income should not be diverted from them to other creditors who do not have such a lien. See *In re Hines*, 88 F.2d 423, 425 (2d Cir. 1937).

That the plaintiffs are entitled to the rental income from the property in question does not mean that the debtor is totally deprived of any interest in the rental income. In accordance with the checks and balances established under the Bankruptcy Code, the debtor may regard the rent as property of the estate, since the broad definition of this concept, as described in Code § 541(a)(1), includes "all legal or equitable interests of the debtor" in the property in question. To be sure, the state–court receiver, as a custodian within the meaning of this term, as expressed in Code § 543(a), was directed to turn over the property and proceeds to the debtor pursuant to an order of this Court dated November 30, 1979. However, in exchange for the right to use the property of the estate, the debtor has a correlative duty imposed under Code § 363(e) to provide adequate protection to a party in interest who requests such protection.

This Court has already determined that the debtor possessed sufficient equity in the property at the time of the hearing to warrant a continuation of the automatic stay under Code § 362. Indeed, the automatic stay was intended to give the debtor a breathing spell from its creditors and an opportunity to structure a repayment or reorganization plan. See *House Report No. 95–595*, 95th Cong., 1st Sess. (1977) 340–2, U.S.Code Cong. & Admin.News, 1978, p. 5787; *Senate Report No. 95–989*, 95th Cong., 2d Sess. (1978) 49–51, U.S.Code Cong. & Admin.News 1978, p. 5787. The stay was not intended to be permanent. It is now the twelfth month since the debtor filed for relief and, nevertheless, no plan has been forthcoming. During this lengthy interval the plaintiffs have not received the

benefit of their bargain; they have lost the security afforded them under their state–authorized sequestration of rents, while other creditors are receiving the benefit of their entitlement. Surely if their assigned interest in the rental income is to have any meaning they are at least entitled to have their interest protected in the face of a continued diminution.

■ Although neither side has alluded to the fact that the plaintiffs' right to the rental income was triggered by the debtor's default under the mortgage, this point deserves consideration. The two sections of the Code which govern the debtor's right to use the rental income, namely §§ 363 and 541 expressly denounce so–called ipso facto clauses which terminate the debtor's interest in the property upon the insolvency or financial condition of the debtor, or on the commencement of a bankruptcy case. See Code § 363(*l*) and 541(c)(1)(B). Although the debtor's default could be regarded as having been the product of its distressed financial condition and also as having paved the way for its petition for relief under Chapter 11, it does not follow that these factors were conditions precedent to the plaintiffs' right to invoke the assignment of rents. The debtor's default in meeting its obligations under the mortgage, regardless of its financial condition, was sufficient justification for plaintiffs to receive the rental income from the mortgaged property. The plaintiffs perfected this right upon the appointment of a receiver in the state court foreclosure action. Manifestly, a clause giving them the right to receive the rental income if the debtor defaulted in complying with its payment obligations under the mortgage cannot now be characterized as a proscribed ipso facto clause, especially when it bears the imprimatur of the state court and was not questioned by the debtor.

■ It next remains to be determined whether the debtor is entitled to a summary judgment dismissing the plaintiffs' request for adequate protection of their interest in the rental income. To state the issue is to answer it. There is nothing in the record submitted to this court to support the con-clusion that because the plaintiffs were enjoined from pursing their state court foreclosure action, they should also be deprived of their right to the assigned rents without further consideration by this Court. What might constitute adequate protection to justify a continuation of the automatic stay under Code § 362 is not necessarily determinative of the debtor's right to continue to use rental proceeds under Code § 363. That the plaintiffs' are being deprived of this right while the debtor and other creditors are receiving the benefit of these funds amply supports a need to review the protection to which the plaintiffs are entitled.

Code § 363(c)(2) expressly conditions a debtor's right to use cash collateral that is property of the estate, absent the consent of the impaired creditor, on obtaining court authorization, after notice and a hearing within the meaning of Code § 102. Unless specifically authorized to the contrary, the debtor is required under Code § 363(c)(4) to segregate and account for the cash collateral. These statutory directions are not inconsistent with the automatic stay granted under Code § 362, nor should they be considered as academic merely because relief from the automatic stay was not obtained. Clearly, the rental income from the mortgaged property must be regarded as "cash collateral" as defined in Code § 363(a), being "Cash ... or other cash equivalents in which the estate or an entity other than the estate have an interest." The debtor's use of such cash collateral entitles the plaintiffs, as assignees of the right to this collateral, to request the court under Code § 363(e) to prohibit or condition such use so as to provide adequate protection of their interest in the cash collateral. If the court finds that the debtor should not have unfettered right to use the cash collateral the court could fashion an order either prohibiting such use or directing that the debtor may use the cash collateral only for the actual, necessary and ordinary expenses concerning the mortgaged property. Hence, no part of the cash could then be used to defray the general expenses of the debtor, to pay other mortgagees or to satis-

fy obligations not directly connected with the debtor's use of the property generating the cash collateral. In short, none of these questions were previously explored by this Court.

Accordingly, this Court denies the debtor's motion for summary judgment, not because the previous order by this Court provided that renewal of relief from the stay could be made if later circumstances develop which warrant such relief, but because there has been no determination of the debtor's right to use the rental income without adequately protecting the plaintiffs. While the plaintiffs' complaint in this proceeding is not precisely pitched to the proper statutory prescription for relief, it is sufficiently clear to be treated as a request for adequate protection under Code § 363(e) so as to enable them to be heard by this Court.

The issue as to adequate protection shall be set down for hearing on November 21, 1980 at 10:00 A. M.

IT IS SO ORDERED.