**In re STONE RIDGE ASSOCIATES, LIMITED PARTNERSHIP, Debtor.**

**Bankruptcy No. 91–40018–11.**

United States Bankruptcy Court, D. Kansas.

July 10, 1992.

James S. Willis and Steven R. Rebein of McDowell, Rice & Smith, Chartered, Kansas City, Kan., for debtor.

Kenneth C. Jones of Watson, Ess, Marshall & Enggas, Kansas City, Mo., for The Travelers Ins. Co.

John E. Foulston, Witchita, Kan., U.S. Trustee,

## MEMORANDUM OF DECISION

JOHN T. FLANNAGAN, Bankruptcy Judge.

Travelers Insurance Company (hereinafter referred to as "Travelers" or "mortgagee") moved to segregate cash collateral, to prohibit the use of cash collateral, to be relieved from stay, and to dismiss the debtor's Chapter 11 case.

The Court finds that this proceeding is core under 28 U.S.C. § 157. The Court has jurisdiction under 28 U.S.C. § 1334 and the general reference order of the District Court effective July 10, 1984.

## BACKGROUND

Travelers holds by assignment from Metro North State Bank a Promissory Note, a First Mortgage and Security Agreement, and an Assignment of Leases and Rents against a 106–unit Overland Park, Kansas, apartment complex owned by the debtor. The First Mortgage and Security Agreement and the Assignment of Leases and Rents were recorded with the Register of Deeds of Johnson County, Kansas, on March 28, 1986. Each document contains language granting the mortgagee a lien on rents from the apartment complex.[1] A

---

**1.** The *First Mortgage and Security Agreement* contains the following:

> 21. *Costs of Enforcement and Right to Have Receiver Appointed.* In any action commenced to foreclose this Mortgage, all sums expended by Mortgagee to obtain title reports and for any other title work, and to insure and protect the Mortgaged Property, shall be added to and become a part of the Secured Indebtedness and included as a part of the judgment in any decree of foreclosure. In any action to foreclose this Mortgage the court, upon application by Mortgagee, shall appoint a receiver for the Mortgaged Property and such receiver shall have the power to enter upon and operate and maintain the

Mortgaged Property, collect the rents, issues, and profits therefrom, apply the same as the court may direct, and exercise such other powers as the court may grant to such receiver and nothing in such appointment shall constitute Mortgagee a mortgagee in possession.

> 22. *Additional Security.* As additional security for the Secured Indebtedness, Mortgagor hereby grants to Mortgagee, its successors and assigns, a security interest in and transfers, sets over and assigns to Mortgagee, its successors and assigns the following: ...

>> (c) all rents, issues, and profits of and from the Mortgaged Property from time to time accruing, under all leases and tenancies now existing or hereafter created, provided,

modified version of the First Mortgage and Security Agreement [2] and the Assignment of Leases and Rents [3] containing changes irrelevant to this case were filed with the Register of Deeds of Johnson County, Kansas, on June 8, 1987.

Stone Ridge Associates defaulted on the promissory note, and on December 21, 1990, Travelers filed a mortgage foreclosure action in the District Court of Johnson County, Kansas, and requested the appointment of a receiver. The state court scheduled a hearing on the appointment of a receiver for 3:00 p.m. on January 3, 1991. On the morning of January 3, 1991, debtor filed its Chapter 11 bankruptcy petition. The next day, January 4, 1991, Travelers filed a motion alleging the rents from the complex were its cash collateral and asking the Court (1) to segregate and prohibit debtor's use of the rents; (2) to perfect its interest in the rents by notice under § 546(b); (3) to grant it relief from the automatic stay to proceed with the state court foreclosure action; and (4) to dismiss the debtor's Chapter 11 case for cause under § 1112(b) and because it was allegedly filed in bad faith.

This Court held a pretrial conference on January 28, 1991, and entered a scheduling order. The parties filed a final pretrial order containing stipulations, which are appended to this opinion, accompanied by briefs and exhibits.

At the hearing on April 18, 1991, debtor's counsel advised the Court that he would consent to a journal entry granting Travelers stay relief, but that the debtor claimed the post-petition rents free of any mortgagee's lien. Travelers' counsel claimed a lien in the post-petition rents, but not the pre-petition rents. After the parties declined to offer testimony, the Court heard arguments and took under advisement the issues of entitlement to post-petition rents and dismissal.

The debtor's brief filed April 18, 1991, states: "The debtor-in-possession does not oppose the entry of an Order granting Travelers relief from stay, nor does it oppose dismissal of this Chapter 11 case."

On May 1, 1991, the parties caused to be filed an agreed order reciting that as of March 31, 1991, the debtor maintained four debtor-in-possession bank accounts, two of which contained post-petition rents totalling in excess of $86,195.00. The remaining accounts contained pre-petition funds totalling in excess of $34,385.00. The order stipulates that during the pendency of the case, the post-petition rents would be segregated in these accounts and used only

however, Mortgagor reserves the right to receive and retain all such rents, issues, and profits so long as there is no default under the terms of this Mortgage, or the Note secured hereby....

Mortgagor shall execute and deliver from time to time financing statements, a conditional assignment of leases and rents by separate instrument, and such other instruments as may be requested by Mortgagee to perfect, confirm, and further evidence the security interests and assignments hereby granted.

The *Assignment of Leases and Rents* contains the following:

In consideration of money in the principal amount of Four Million Two Hundred Fifty Thousand and No/100 Dollars ($4,250,000.00) loaned to Assignor by Assignee, the receipt of which is hereby acknowledged, Assignor grants, sells, assigns, transfers and sets over to Assignee, and does hereby grant to Assignee a security interest in all right, title and interest of Assignor in and to all leases, now existing or executed after the date of this Assignment, creating a leasehold estate in all or any portion of the following described real estate,

together with all extensions and renewals thereof, and together with all rents, issues, profits and income arising therefrom, or from any month-to-month tenancy or tenancy at will that may now or later exist in or upon any part of the following described real estate located in Johnson County, Kansas, to wit:....

2. The lender caused financing statements to be filed to perfect a security interest in various categories of personal property, but since Kansas law treats rents as real property, only the mortgage is relevant here.

3. The lender holds both a Mortgage containing an assignment of rents clause and a separate Assignment of Leases and Rents. The briefs make no distinction between these documents. The Court is not aware of any Kansas case or statute suggesting that the Court should treat a separate rent assignment document as an absolute transfer independent of a security transaction. Accordingly, the Court will assume the Assignment of Leases and Rents to be superfluous.

for the maintenance and operation of the apartment complex.

The agreed order further recites that "Travelers may proceed to obtain possession of its collateral listed herein by Agreement or through legal action in State Court against Debtor, *in rem*, without prejudice to the rights of other creditors claiming a security interest in said property who also may foreclose."[4] The order then leaves for the Court to decide whether Travelers is entitled to the post-petition rents collected by the debtor. Nothing in the order indicates that the mortgagee was withdrawing its motion for dismissal of the case.

In a May 7, 1992, motion to set a bar date for the filing of claims, debtor recites, "Although this debtor is no longer operating, there still remains [sic] funds on hand that need to be disbursed possibly pursuant to a proposed Chapter 11 Plan of Liquidation...."

The debtor failed to file a plan of reorganization within the 120–day exclusivity period granted the debtor by § 1121(b). The debtor made no request to extend the exclusivity period. Approximately three months after expiration of the exclusivity period, the U.S. Trustee filed a motion to set a deadline for the filing of a plan and disclosure statement. The debtor and the U.S. Trustee then joined in an agreed order extending the time for filing a plan to 30 days after the Court's decision on the rents issue.

The debtor filed monthly financial reports with the U.S. Trustee and the Bankruptcy Clerk. The May 1991 report shows a notation stating, "Please note that receiver was appointed on May 13, 1991." This is the extent of the Court's knowledge of what has transpired in state court since the

agreed stay relief order was filed May 1, 1991.

Steven R. Duvall signed the debtor's Chapter 11 petition in his capacity as General Partner of Stone Ridge Associates. The schedules show that Mr. Duvall holds an unsecured claim against the estate of $137,214.00 out of total listed unsecured claims of $139,851.43. The claims register shows that Mr. Duvall has filed a formal Proof of Claim for the same unsecured amount. The Proof of Claim states the consideration for the claim to be "Promissory note dated December 13, 1987 and partnership agreement allowing same."

## DISCUSSION

The briefs address the question of whether a mortgage purporting to assign rents from real property creates a lien on those rents that a court will recognize for cash collateral purposes in the mortgagor's Chapter 11 bankruptcy. To answer the question, a court must decide whether the mortgagee has an enforceable state law lien against the rents before the mortgagor files bankruptcy.[5] If so, the mortgagee is entitled to cash collateral treatment of the rents under Bankruptcy Code §§ 363(a) and 552(b), unless the court orders otherwise under the exception proviso at the end of § 552(b).

Since courts must look to state law to determine property interests, there are potentially as many different answers to the rents question as there are states with different laws on the enforceability of mortgage rents liens. Kansas decisions view rents as real property, not as personal property subject to the rules of Article 9 of the Uniform Commercial Code. Kansas mortgage law holds that if the mortgagee

4. Technically, relief from the § 362 stay does not remove property from the bankruptcy estate absent a motion and order of abandonment. But, the Court construes the quoted language from the agreed order as including abandonment of the real estate since this appears to have been the intent of the parties. The rents produced by the property before its abandonment remain property of the estate.

5. "Unless some federal interest requires a different result, property interests created and defined by state law are controlling in bankruptcy." *Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *In re Matter of Jeffers,* 3 B.R. 49 (Bkrtcy.N.D.Ind.1980); *In re Jenkins,* 13 B.R. 721 (Bkrtcy.D.Colo.1981); *In re Oak Glen R–Vee,* 8 B.R. 213 (Bkrtcy.C.D.Cal. 1981); *In re Gaslight Village, Inc.,* 6 B.R. 871 (Bkrtcy.D.Conn.1980); *In re Hellenschmidt,* 5 B.R. 758 (Bkrtcy.D.Colo.1980); *In re Kuhn*

fails to obtain actual possession [6] of the rents, either by agreement with the mortgagor, through a receivership order, or by other proper legal action before the mortgagor's judgment creditor attaches the rents to satisfy the judgment, the mortgagee cannot enforce any right to the rents against the attaching creditor. If the mortgagor transfers the rents to any third party before the mortgagee gains possession of them through any of the listed methods, the mortgagee loses out to the third party.[7]

■ There is some wisdom in the Kansas rule giving the mortgagor complete control of rents until it is clearly established that the mortgagee actually possesses them. The mortgagor owns the real estate and is legally entitled to retain its possession until foreclosure sale, and beyond if he has redemption rights. Yet, if the mortgagor cannot use the rents to maintain the property, to pay the property taxes, and to operate any associated business, the legal right of possession is a hollow one.[8]

Also, those who transact business with the mortgagor, seeing him in possession of the land, assume that he controls the rents normally available to pay their unsecured extensions of credit.[9] Kansas law tacitly recognizes the predicament of the parties.

It gives them a measure of protection by requiring the mortgagee to obtain actual possession of rents before the law will enforce the mortgagee's rights in rents against third party creditors, transferees or donees of the mortgagor. Under present law, this protection is given, even though the mortgagee has recorded the mortgage or assignment document. The rule as developed by the decisional law of the state is laudable. It gives those who do business with the mortgagor an advance opportunity to learn that the mortgagor is a mere repository for the property who is not really in control of its income before they decide to extend him credit.

When the mortgagor elects to reorganize under Chapter 11, an analogous situation arises. The filing leaves the debtor in possession of the mortgaged property with an opportunity to propose a plan of reorganization. The automatic stay protects this possession against the mortgagee and others. Seeing the debtor in possession of the property and trying to reorganize, the debtor's regular suppliers often advance postpetition credit. They do this in reliance on their right under the Code to recover their advances as administrative claimants with high priority. A mortgagor in Chapter 11,

Const. Co., Inc., 11 B.R. 746 (Bkrtcy.S.D.W.Va. 1981).

**6.** Hall v. Goldsworthy, 136 Kan. 247, 251, 14 P.2d 659 (1932).

**7.** For an in-depth discussion of the Kansas law supporting this conclusion, see In re Stanley Station Associates, L.P., 139 B.R. 990, 997–1000 (Bkrtcy.D.Kan.1992).

**8.** It is anomalous that under Kansas law the mortgagee can obtain the rents from the beginning of the foreclosure action up to the time of sale, but not beyond if the mortgagor is entitled to redemption rights. Schultz v. Stiner, 97 Kan. 555, 155 P. 1073 (1916); Bank v. Dikeman, 98 Kan. 222, 157 P. 1177 (1916).

**9.** The Kansas legislature passed Senate Bill 81, effective May 23, 1991, now found at K.S.A. 58–2343:

(b) The lien of an assignment instrument shall be a good, valid and enforceable lien on the rents from the real property therein described. Such lien shall be valid and binding against, unavoidable by and fully perfected as to the borrower and all subsequent purchasers, mortgagees, lien creditors, other lienholders and other persons for all purposes from the time of filing the assignment instrument or an affidavit of assignment of rents signed by the borrower for record in accordance with K.S.A. 58–2221 and amendments thereto, with a priority dating from the time of such filing, without any necessity for the lender to take possession or control of such rents or the property from which such rents are derived, to take any action tantamount to the taking of such possession or control, or to take other action whatsoever.

While this statute is not applicable to the present controversy, it aims to change the present case law holding that the mortgagee must obtain actual possession of the rents before its lien can prevail over a judicial lien creditor or transferee of the mortgagor. Read literally, the statute means that the mortgagee has a lien from the date of recording of the mortgage enforceable against rents traceable to any party dealing with the mortgagor before or after default. The implications for third parties are frightening. In their zeal to effectuate the relation-back mechanism of Bankruptcy Code § 546(b), sponsors of this measure may have created a monster.

just as outside of bankruptcy, needs the unfettered rental income flow if it is to have any hope of putting forth a workable repayment plan.

If the mortgagee does have a lien in the post-petition rents, the provisions of Chapter 11 make it less likely that a workable plan of repayment can be proposed. Unless the mortgagee consents, § 1129 mandates that its secured claim receive deferred cash payments having a present value of at least as much as the allowed amount of such claim as of the effective date of the plan. If the mortgagee has a lien in the post-petition rents, it will insist that those rents be included in the allowed amount of the secured claim along with the value of the real property itself. Appraisers derive the value of real property largely from an analysis of its cash flow. So, the secured claim amount includes both the valued property and the stream of cash flow that gives the property its value in the first place. There is a compounding effect taking place in deciding the value of the mortgagee's secured claim. To complicate the problem, the mortgagor has no free income with which to make the stream of payments, the present value of which must at least equal the allowed amount of the mortgagee's secured claim. If the rents are subject to a lien, the mortgagee would want and is entitled to adequate protection against their loss. The result is that the rents are not available to make the very payments on the secured claim required by § 1129. In short, even before the court can assess the mortgagor's prospects for reorganization, when the mortgagee has a lien on post-petition rents, Chapter 11 is ruled out as a viable remedy for the financially distressed mortgagor.[10]

This Court's recent decision in *In re Stanley Station Associates, L.P.,* 139 B.R. 990 (Bkrtcy.D.Kan.1992), provides its view of the law on the enforceability [11] of rent assignment clauses against a debtor in Chapter 11. The decision holds that in order for a mortgagee to have an enforceable interest in the debtor's rents against a judicial lien creditor of the debtor under Kansas law, the mortgagee must have taken actual possession of the rents before the debtor filed bankruptcy (1) by obtaining the rents by agreement with the mortgagor, (2) by obtaining them through the appointment of a receiver, or (3) by obtaining them through "other proper legal action" equivalent to the appointment of a receiver. By authority of Bankruptcy Code § 544, the debtor has the status of a judicial lien creditor as of the commencement of the Chapter 11 case. Applying that rationale here, Travelers' rents lien is unenforceable against the debtor occupying the status of a judicial lien creditor as of the moment of the bankruptcy filing according to Kansas mortgage law and the Bankruptcy Code since Travelers did not obtain actual possession of the rents before this debtor filed its Chapter 11 petition.

But, the *Stanley Station* rationale dealt with the issue in a context where the debtor's financial condition did not preclude a reasonable likelihood of reorganization. If the mortgagor in reorganization has legitimate prospects for repaying its secured and unsecured creditors out of its future income, Chapter 11 itself may provide the court with a sufficient federal interest in fostering reorganization to warrant sanctioning the debtor's continued use of encumbered rents for its attempted non-liquidating reorganization effort.[12] The finding

---

**10.** In *In re Rancourt,* 123 B.R. 143, 149–151 (Bkrtcy.D.N.H.1991), Judge Yacos suggests similar, if less dire, impediments to reorganization brought about by rents liens. He wonders if a court might address these problems using the last clause of § 552(b), assuming the court can identify a sufficient federal interest to justify interference with a cash collateral right based on a lien established by state law. In Footnote 1 at page 145, he comments on the parallel between the language in *Butner* and the last proviso of § 552(b):

Arguably the safety valve feature "unless some other interest requires a different result" in the *Butner* case has now been codified in effect by the "except to any extent that the court ... based on the equities of the case, orders otherwise" proviso in § 552(b) of the present Code.

**11.** Since the "perfection" concept adds little but confusion to the rents analysis, the Court has avoided the term entirely.

**12.** See Footnotes 5 and 10.

of any such federal interest would surely require that a legitimate effort at rehabilitation is being undertaken. Happily, under present Kansas law, when the mortgagee fails to possess the rents before the mortgagor files Chapter 11, state law provides legitimate property law rules that justify the debtor's continued use of the rents without interfering with any vested rights of the mortgagee and, if a reorganization is in prospect, the courts have allowed the mortgagor to use the rents to that end. But, should the same result follow in a Chapter 7 liquidation case? [13]

To oversimplify, Chapter 7 envisions liquidation of the debtor's business after which the trustee distributes the estate funds to the creditors who have allowed claims. Upon a mortgagor entering Chapter 7, a mortgagee will invariably move for stay relief to allow foreclosure and sale of the mortgaged property in state court. In the typical single asset real estate case of today's economy, the mortgagee is usually undersecured. That is, its promissory note claim exceeds the value of the mortgaged property. Under Kansas law outside of bankruptcy, a mortgagee can obtain the rental income through state court receivership proceedings if it can show a probability that the sale value of the real property is insufficient to satisfy the debt in full.[14] Absent extraordinary circumstances, there is no reason why the state court would not grant the mortgagee possession of the rents by appointment of a receiver.[15] The Chapter 7 trustee would not want the property because it has no equity value which he can salvage for the estate. He would abandon the property from the estate. Since Chapter 7 involves only liquidation of the property in the estate, there is no prospect that the mortgagee's claim can be paid out of any future earnings or rents under a

reorganization plan as in Chapter 11. Generally, bankruptcy courts will approve abandonment and grant immediate relief from stay so that the mortgagee can sue in state court for the rents, a remedy the mortgagee could have pursued and received had no Chapter 7 been filed.

Between the filing of the Chapter 7 petition and abandonment of the property from the estate along with stay relief, rents will accrue in the bankruptcy estate. Without the prospect of full deferred repayment of the mortgagee out of the property's future earnings, why should the trustee be entitled to take the accruing rents for distribution to the unsecured creditors when, but for the § 362 stay, the mortgagee would have obtained a state court order entitling it to possession of the rents?

This Chapter 7 scenario is analogous to the fact pattern before the Court. The mortgagor was facing the appointment of a receiver in state court. The appointment of the receiver would have entitled the undersecured mortgagee to the rents from the property. To prevent this, the mortgagor filed for Chapter 11 protection, even though it had, as it turned out, no ability to present a plan of reorganization that would repay the mortgagee out of future earnings. The mortgagor evidenced this inability by relinquishing possession of the realty to the mortgagee shortly after filing.

The mortgagee asked the Bankruptcy Court for the rents in its stay relief and sequestration motion the day after the case was filed. Some time passed before the parties agreed upon a stay relief order that, in effect, gave possession of the real property to the mortgagee on May 1, 1991. So far as it appears, there was never any serious intent on the part of the mortgagor to reorganize under Chapter 11, except per-

---

**13.** What happens if a Chapter 11 fails before confirmation and is dismissed rather than converted to Chapter 7? At dismissal, the bankruptcy estate will sometimes contain accrued postpetition rents that have not been used to maintain the property during the reorganization effort. Who is entitled to these funds upon dismissal? Read on.

**14.** See *Seckler v. Delfs*, 25 Kan. 159 (1881); *Bank v. Dikeman*, 98 Kan. 222, 157 P. 1177

(1916); and *In re Stanley Station Associates, L.P.*, 139 B.R. 990, 1002 (Bkrtcy.D.Kan.1992), pointing out that this is still good law.

**15.** Most commercial transactions involve corporate or partnership debtors that waive any right of redemption which would entitle them to possess the rents during a redemption period after the foreclosure sale.

haps through a plan of liquidation as allowed by the Code. Under these conditions, why should the mortgagor be able to use Chapter 11 to take the rents for the estate, thereby giving Steven R. Duvall, an insider, an opportunity to appropriate them, either through a plan of liquidation or a claim filed in a converted Chapter 7 case?

## CONCLUSION

■ The debtor has in its possession $86,195.00 of post-petition rents which it agreed to hold under the May 1, 1991, order and to use only for the maintenance and operation of the apartment complex. As early as April 18, 1991, in its brief, the debtor announced its acquiescence to stay relief and dismissal of the case. The debtor relinquished possession of the apartment complex around May 1, 1991, and the mortgagee proceeded in state court to obtain a receiver on May 13, 1991. It was apparent by May 1, 1991, if not before, that there was no possibility of a rehabilitation since the debtor no longer had control of the apartment complex.

If there was a viable reorganization afoot, the full doctrine of *Stanley Station* would control this case, but without that prospect, there is no reason to give it complete application or to sustain the mortgagor's claim to the rents. The Court, therefore, declines to apply *Stanley Station* in this case for the reasons discussed in this opinion.

One of this Court's principal holdings in *Stanley Station* was that the debtor-in-possession, who has the rights and powers of a trustee under § 1107(a), could use the trustee's § 544(a) hypothetical judicial lien creditor status to plug itself into the Kansas law that allows such a lien creditor to prevail over a mortgagee who has failed to take possession of rents before the lien creditor obtains an interest in them.[16]

The Court now rules that the debtor is prohibited from using the trustee's § 544(a) status as a hypothetical judicial lien creditor to take advantage of the mortgagee's vulnerability to such a creditor under Kansas law. The source of the Court's power to make this order is the following statute granting it supervisory authority over the rights and powers of a trustee.

### § 1107. Rights, powers and duties of debtor in possession

(a) Subject to any limitations on a trustee serving in a case under this chapter, *and to such limitations or conditions as the court prescribes*, a debtor in possession shall have all the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2), (3), and (4) of this title, of a trustee serving in a case under this chapter. (Emphasis added.)

However, this Court's limitation on the debtor's use of the trustee's judicial lien creditor status does not override or displace the Kansas mortgage rule applicable to the facts of this case. The Kansas rule says that a mortgagee that fails to obtain actual possession of rents will lose out to a judgment creditor or assignee of the mortgagor who gains an interest in the rents. This rule applies to this case, but because of the limitation imposed on the exercise of the trustee's powers by this Court's order, the rule does not become operative here. In this case, the mortgagee did not obtain possession of the rents before the mortgagor filed its Chapter 11 petition; consequently, except for this Court's ruling refusing to allow the debtor to use its judicial lien creditor status where no reorganization is possible, the debtor would be entitled to prevail.

■ Finally, Travelers urges the dismissal of the case for cause under § 1112(b) and on the ground that the petition was filed in bad faith. Some courts have read "bad faith" or "lack of good faith" in filing the petition for bankruptcy relief into the "cause" provision of § 1112(b).[17] Under

---

16. In its brief, debtor argues for § 544 lien avoidance, as well as judicial lien creditor status, but it has not filed an adversary complaint asking the Court to determine the validity of the lien as required by Fed.R.Bankr.P. 7001.

17. *Matter of Levinsky*, 23 B.R. 210 (Bkrtcy. E.D.N.Y.1982); *In re Victory Construction Co.*, 9 B.R. 549 (Bkrtcy.C.D.Cal.1981).

these decisions, if the debtor were found to have filed the Chapter 11 petition with a purpose other than to reorganize its business, dismissal for bad faith filing of the petition would be appropriate. But, the facts in this case do not go far enough to base dismissal on this theory.

The debtor's willingness to consent to stay relief, and even to dismissal, within a few months after filing its petition does not establish that it intended to use Chapter 11 for some purpose other than the rehabilitation of a financially distressed apartment complex. Moreover, it is clear that Mr. Duvall, the debtor's controlling General Partner, holds a large claim that he wishes to have paid, perhaps in a liquidation plan or a converted Chapter 7. Without more, however, this does not prove that the case was filed with the sole motive of freeing the rents from the mortgagee's lien so that they could be applied to Mr. Duvall's claim. There is insufficient evidence to justify a finding of bad faith filing at the initiation of the case. Nevertheless, other grounds arising after the filing of the Chapter 11 petition support dismissal in this case.

Code § 1112(b) enumerates 10 non-exclusive grounds which constitute cause for the dismissal or conversion of a Chapter 11 case, whichever is in the best interest of creditors and the estate. Several of the enumerated grounds set out in § 1112(b) apply here to support dismissal. They are: (1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation, (2) inability to effectuate a plan, and (3) unreasonable delay by the debtor that is prejudicial to creditors. Additionally, the complex of circumstances recited in this opinion touching the futility of any future reorganization are sufficient independent "cause" for dismissal. The requirements of Fed.R.Bankr.P. 1017(d) having been satisfied by the hearing of April 18, 1991, this case should be dismissed.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the debtor is prohibited from using its § 544(a) judicial lien creditor status in combination with state law to defeat the mortgagee's lien in the rents and debtor is directed to deliver the rents in its possession to Travelers forthwith.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that this case is dismissed forthwith, subject to the Court's retention of jurisdiction to enforce the orders set out herein.

The foregoing discussion shall constitute findings of fact and conclusions of law under Bankruptcy Rule 7052 and Rule 52(a) of the Federal Rules of Civil Procedure.

IT IS SO ORDERED.

## APPENDIX

### 4. STIPULATIONS

The parties hereto stipulate and agree that venue is properly laid in this District; that the United States Bankruptcy Court for the District of Kansas has jurisdiction over the parties hereto and the subject matter hereof; that all proper, necessary and indispensable parties are parties hereto, and to the following facts:

A. Movant Travelers is a Connecticut corporation having its principal place of business at Nine Plaza Building, One Tower Square, Hartford, Connecticut 06183. Travelers is currently authorized to do business as an insurance company in the State of Kansas.

B. Debtor Stone Ridge Associates Limited Partnership ("Stone Ridge") is a limited partnership created pursuant to the Kansas Uniform Limited Partnership Act.

C. For good and valuable consideration, Stone Ridge executed and delivered to Metro North State Bank ("Metro North") a promissory note dated March 28, 1986 (the "Note"), in the original principal sum of $4,250,000 with interest and other charges as specified in the Note. A true copy of the Note has been designated by Travelers as Exhibit A.

D. As security for payment of the Note, Stone Ridge executed and delivered to Metro North a First Mortgage and Security Agreement dated March 28, 1986 (the "Mortgage"), recorded March 28, 1986, in the Office of the Johnson County, Kansas Register of Deeds, in Volume 2310, at Page 64, and all recording and registration fees were paid thereon, whereby Stone Ridge mortgaged and granted a security interest

to Metro North in and to the real estate, improvements and related personalty, located in the City of Overland Park, Johnson County, Kansas, which property has since been platted and the legal description has been changed to:

LOT 1, STONE RIDGE, a subdivision in the City of Overland Park, Johnson County, Kansas, according to the recorded plat thereof,

(the "Property") all upon the condition that Stone Ridge would pay the indebtedness in accordance with the terms of the Note and otherwise perform its obligations and covenants as provided by the Note and the Mortgage. A true copy of the Mortgage has been designated by Travelers as Exhibit B.

E. As additional security for payment of the Note, Stone Ridge executed and delivered to Metro North an Assignment of Leases and Rents dated March 28, 1986 (the "Assignment of Leases and Rents"), recorded March 28, 1986, in the Office of the Johnson County, Kansas Register of Deeds in Volume 2310, at Page 92. A true copy of the Assignment of Leases and Rents has been designated by Travelers as Exhibit C. The security interest of Metro North in and to the fixtures and personal property located in and about the Property was reflected by a Financing Statement filed March 28, 1986, in Johnson County, Kansas as Document No. 88–2872, and a Financing Statement filed April 3, 1986, with the Kansas Secretary of State as Document No. 1043580.

F. On June 4, 1987 Stone Ridge and Metro North executed a Modification of Promissory Note, First Mortgage and Security Agreement and Assignment of Leases and Rents (the "Modification"), recorded in the Office of the Johnson County, Kansas Register of Deeds in Volume 2602, at Page 506. A true copy of the Modification has been designated by Travelers as Exhibit D.

G. On June 4, 1987 Metro North, with the consent of Stone Ridge, assigned the Note and Mortgage to Travelers by way of an assignment recorded in the Office of the Johnson County, Kansas Register of Deeds in Volume 2602, at Page 520. A true copy

of the Assignment of Promissory Note and First Mortgage and Security Agreement has been designated by Travelers as Exhibit E.

H. On June 4, 1987 Metro North, with the consent of Stone Ridge, assigned the Assignment of Leases and Rents to Plaintiff [movant Travelers] by way of an assignment recorded in the Office of the Johnson County, Kansas Register of Deeds in Volume 2602, at Page 526. A true copy of the Assignment of Assignment of Leases and Rents has been designated by Travelers as Exhibit F.

I. Travelers is the present owner and holder of the Note, the Mortgage, and the Assignment of Leases and Rents.

J. On December 21, 1990, Travelers filed a Petition for Foreclosure of Real Estate Mortgage and Application for Appointment of Receiver in the District Court of Johnson County, Kansas, as case number 90–C–14517. A hearing was scheduled on Travelers' Application for Appointment of Receiver at 3:00 p.m., January 3, 1991 which was not held by reason of Debtor's bankruptcy filing the same day.

K. The Property is the primary asset of this bankruptcy estate.

The parties further stipulate and agree that the law governing this case is Kansas law.