**In re KANSAS OFFICE ASSOCIATES, LTD., Debtor.**

**Bankruptcy No. 94–40070–11.**

United States Bankruptcy Court, D. Kansas.

Nov. 4, 1994.

Charles T. Engel, Topeka, KS, for debtor.

John W. McClelland, J. Bradley Pace, Kansas City, MO, for creditor "BRT".

Cynthia L. Dillard, Laurence M. Frazen, Kansas City, MO, for creditor "MMIF".

## MEMORANDUM OPINION AND ORDER

JULIE A. ROBINSON, Bankruptcy Judge.

This matter comes before the Court pursuant to the Motion to Prohibit Use of Cash Collateral filed by Master Mortgage Investment Fund, Inc. ("MMIF"). A hearing was held on April 6, 1994, at which time the Court took the matter under advisement. MMIF appeared by and through its attorney, John McClelland. Kansas Office Associates, LTD. ("debtor") appeared by and through its attorney, Charles T. Engel. BRT Realty Trust ("BRT") appeared by and through its attorney, Cynthia L. Dillard.

## JURISDICTION

The Court has jurisdiction over this proceeding. 28 U.S.C. § 1334. This is a core proceeding. 28 U.S.C. § 157(b)(2)(M).

## FINDINGS OF FACT

The debtor is a limited partnership and its sole asset is a multi-tenant office building located in Fairway, Kansas (the "Fairway Property"). The debtor's sole source of income is the rental income from the Fairway Property.

On January 15, 1987, debtor executed a Promissory Note in the principal amount of $7,200,000, a Mortgage and Security Agreement, and an Assignment of Leases and Rents in favor of Blue Valley Federal Savings and Loan Association. The note is secured by the Mortgage and Security Agreement covering the debtor's real estate and equipment in Fairway, Kansas. The note is further secured by the Assignment of Leases and Rents covering all rent payable to the debtor under the leases of the Fairway Property. The Mortgage and Security Agreement and Assignment of Leases and Rents were recorded with the Register of Deeds of Johnson County, Kansas, on January 15, 1987. The January 15, 1987 Note, Mortgage and Security Agreement, and Assignment of Leases and Rents were assigned to MMIF on January 5, 1990. This assignment was recorded on January 10, 1990, with the Register of Deeds of Johnson County, Kansas. The note was modified by a First Amendment to Note, Mortgage and Other Loan Documents dated January 5, 1990; an Amended and Restated Promissory Note dated January 5, 1990, restating the principal balance of $7,000,000; and a Second Amendment to Note, Mortgage and Other Loan Documents dated September 2, 1992 (collectively the "Loan Documents"). MMIF assigned the Loan Documents to BRT on January 5, 1990, in return for a note executed by MMIF in favor of BRT in the principal amount of $5,000,000.

MMIF filed a voluntary petition for relief under Chapter 11 of Title 11, United States Code, on April 17, 1992, in the United States Bankruptcy Court for the Western District of Missouri, Case No. 92–41306–2–11. On

August 10, 1992, the Honorable Frank W. Koger entered a Stipulation and Agreed Final Order Granting Adequate Protection and Authorizing Use of Cash Collateral (the "Cash Collateral Order") which provided in pertinent part:

13. BRT is the holder of a Mortgage Note dated January 5, 1990, executed by [MMIF] in the principal amount of $5,000,-000 (the "Note"). As of the Petition Date, [MMIF] was indebted to BRT under the Loan Documents (as hereinafter defined) in the aggregate amount of $4,887,948.23, ... (the "Indebtedness")....

14. In connection with the execution of the Note *and to secure performance thereof,* [MMIF] executed and delivered to BRT, as security for the Note, a Pledge and Security Agreement (the "Pledge Agreement"), dated January 5, 1990, *granting BRT a security interest in a Promissory Note, a Mortgage and Security Agreement and an Assignment of Leases and Rents* (all of which are more particularly described below) which evidenced and secured obligations owed to [MMIF] by Kansas Office Associates, Ltd. a Missouri limited partnership ("KOA"). The Note, the Pledge Agreement and all other documents executed and delivered in connection therewith are hereinafter collectively referred to as the "Loan Documents."

15. Pursuant to the terms of the Pledge Agreement, *as security for the Note,* [MMIF] granted BRT a security interest in a promissory note (and all amendments thereto) dated January 15, 1987, in the original principal amount of $7,200,000 payable by Kansas Office Associates, Ltd. to Blue Valley Federal Savings & Loan, as amended and restated by [MMIF] and KOA pursuant to an Amended and Restated Promissory Note dated January 5, 1990, in the principal amount of $7,000,000 (the "KOA Note").

16. The KOA Note is secured by a Mortgage and Security Agreement of even date, which encumbers the property located at 4210 Shawnee Mission Parkway, known as the Fairway Office Center, Fairway, Kansas (the "Fairway Property"). The Mortgage and Security Agreement is filed for record in the Register of Deeds Office, County of Johnson, State of Kansas, in Volume 2500, page 576, as amended by a certain First Amendment to Note, Mortgage and Other Loan Documents between [MMIF] and KOA dated as of January 5, 1990, and filed for record in the Register of Deeds Office, County of Johnson, State of Kansas, in Volume 3108, page 194.

17. The KOA Note is also secured by an Assignment of Leases and Rents of even date, which document is filed for record in the Register of Deeds Office, County of Johnson, State of Kansas, in Volume 2500, page 605. The KOA Note and the accompanying Mortgage and Security Agreement and Assignment of Leases and Rents, together with all other documents executed and delivered in connection therewith, as amended, modified and supplemented by the First Amendment, are hereinafter collectively referred to as the "Pledged Documents."

18. Pursuant to the Loan Documents, *BRT holds a valid and perfected first priority security interest* in all right, title and interest of [MMIF] in the Pledged Documents. The right of [MMIF] to receive payments from KOA under the Pledged Documents comprises, at least in part, the security of BRT for the payment of the Indebtedness.

19. BRT's security interest in the Pledged Documents was perfected by taking possession of the Pledged Documents and by the filing of a Uniform Commercial Code Financing Statement with the Kansas Secretary of State as document # 1522406 on January 17, 1990.

20. KOA is in default of its obligations to [MMIF] under the Pledged Documents.
. . . .

24. All cash or cash equivalents representing proceeds of the Pledged Documents ... constitute "cash collateral" pursuant to 11 U.S.C. § 363(a) and are subject to the duly perfected first-priority liens of BRT (the "Cash Collateral").

25. The Pledged Documents together with all proceeds thereof (collectively the "Collateral") are encumbered by and sub-

748

ject to the first priority, perfected security interest of BRT for the repayment of the Indebtedness.

. . . .

27. [MMIF] remains in possession of and continues to use the Collateral and Cash Collateral in operating its business.

. . . .

29. [MMIF] is desirous of continuing to operate its businesses, which will require the use by it of the Collateral and Cash Collateral.

30. BRT is willing to permit such use, but only to the extent and upon the terms and conditions hereinafter set out.

(Emphasis added).

Debtor filed a voluntary petition under Chapter 11 of Title 11, United States Code, on January 19, 1994. On February 4, 1994, MMIF filed a motion to prohibit the debtor from using cash collateral to conduct its business without obtaining an order from the court or receiving MMIF's consent pursuant to 11 U.S.C. § 363(c)(2). MMIF argues that its interest in the cash collateral is not adequately protected, and that it does not consent to the use of its cash collateral.

### CONCLUSIONS OF LAW

■■■ The Court must determine whether MMIF has a valid lien on the rents from debtor's Fairway Property which would constitute cash collateral in debtor's bankruptcy case. The Bankruptcy Code defines "cash collateral" as:

... cash, ... or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

11 U.S.C. § 363(a). Section § 552(b) of 11 U.S.C. provides that where a pre-petition security agreement creates a security interest which extends to property of the debtor acquired before the commencement of the case and to proceeds of such property, then such security interest extends to such proceeds acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law, unless the court orders otherwise. Therefore, the Court must decide whether MMIF had an enforceable state law[1] lien against the rents before the debtor filed bankruptcy. If so, MMIF is entitled to cash collateral treatment of the rents under § 363(a). *In re Stone Ridge Assocs., Ltd. Partnership*, 142 B.R. 967, 970 (Bankr.D.Kan.1992).

■■■ Debtor makes several arguments as to why MMIF does not have a perfected lien in the rents.[2] Debtor has not alleged that MMIF or BRT did not properly file any documents in accordance with state law. Instead, debtor argues that MMIF is not perfected because MMIF did not take legal action prior to the filing of the bankruptcy petition to secure the rents. Traditionally,

---

1. Unless some federal interest requires a different result, property interests created and defined by state law are controlling in bankruptcy. *See Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979).

2. Debtor argues that MMIF is unperfected, and therefore the debtor, as a hypothetical creditor pursuant to 11 U.S.C. § 544, may take the rents prior to MMIF. The Court notes that the terms "enforcement" and "perfection" are used in various cases in referring to the position the mortgagee must have before it is entitled to cash collateral treatment of the rents in issue. *See, e.g., In re Wiston XXIV Ltd. Partnership*, 147 B.R. 575, 582 n. 10 (D.Kan.1992), *appeal dismissed* 988 F.2d 1012 (10th Cir.1993) (noting the distinction between lien attachment, lien perfection, and lien enforcement, and stating that while the

creditor may be required to take court action to enforce its lien and take possession of the rents, the lien was nevertheless perfected prior to the filing of the petition in bankruptcy); *In re Stone Ridge Assocs., Ltd. Partnership*, 142 B.R. 967, 972 n. 11 (Bankr.D.Kan.1992) (speaking in terms of the "enforceability" of rent assignment clauses, the Court notes that since the "perfection" concept adds little but confusion to the rents analysis, the Court has avoided the term entirely). In light of the recent enactment of K.S.A. § 58–2343(b), which provides that mortgagees have a lien from the date of recording which is enforceable against third parties, the distinction may not be important. Nevertheless, in the present case the debtor has framed its arguments in terms of "perfection" and therefore the Court will use that term.

Kansas law required the mortgagee to obtain actual possession of the rents, either by agreement with the mortgagor, through a receivership order, or by other proper legal action, in order to have an enforceable interest in the debtor's rents. *See, e.g., In re Stone Ridge Assocs., Ltd. Partnership,* 142 B.R. 967, 970–71 (Bankr.D.Kan.1992). However, the Kansas Legislature has enacted K.S.A. 58–2343, effective May 23, 1991, which provides in pertinent part that:

> (b) The lien of an assignment instrument shall be a good, valid and enforceable lien on the rents from the real property therein described. Such lien shall be valid and binding against, unavoidable by and fully perfected as to the borrower and all subsequent purchasers, mortgagees, lien creditors, other lienholders and other persons for all purposes from the time of filing the assignment instrument or an affidavit of assignment of rents signed by the borrower for record in accordance with K.S.A. 58–2221 and amendments thereto, with a priority dating from the time of such filing, without any necessity for the lender to take possession or control of such rents or the property from which such rents are derived, to take any action tantamount to the taking of such possession or control, or to take other action whatsoever.

K.S.A. 58–2343(b).

■ This new statute is controlling in this case.[3] The controlling date for purposes of determining the respective property rights of the parties is the date the petition was filed, which in this case is January 19, 1994. *See In re Wiston XXIV Ltd. Partnership,* 147 B.R. 575, 581 n. 9 (D.Kan.1992), *appeal dismissed* 988 F.2d 1012 (10th Cir.1993). The

statute is effective as of May 23, 1991, and therefore governs this case.

■ Debtor also argues that MMIF is not perfected because it assigned the Mortgage and Assignment of Leases and Rents to BRT "absolutely" and not as security and therefore MMIF is no longer the holder of the assignment and mortgage. MMIF argues that although the assignment contains form language which attempts to characterize the assignment as absolute, the assignment was actually for the purpose of securing the obligation from MMIF to BRT. MMIF contends that it will remain the owner of the Loan Documents until there is a default in the loan from BRT to MMIF and BRT takes the necessary action to foreclose upon its collateral. The nature of the assignment was specifically addressed in MMIF's Chapter 11 bankruptcy proceeding. The Cash Collateral Order addressed the respective rights of MMIF and BRT regarding the Loan Documents. BRT has not claimed absolute ownership of the KOA Note or contested MMIF's right to seek an order prohibiting use of cash collateral. In fact, BRT has acknowledged in its reply brief that MMIF has properly asserted the cash collateral issues and that MMIF has been designated as BRT's agent for purposes of collecting on the Loan Documents.[4]

■ In connection with debtor's argument that MMIF assigned the Mortgage and Assignment of Leases and Rents to BRT absolutely, debtor also argues that MMIF assigned the underlying promissory note as security, and therefore MMIF holds the note while BRT holds the collateral. The Court has previously noted that the Cash Collateral Order in MMIF's bankruptcy addressed the

---

3. The Court notes that the debtor cites case law that does not address the applicability of K.S.A. 58–2343(b). In light of the applicability of the statute to the present case, the Court finds the case law cited by debtor unpersuasive on this issue.

4. The Court notes that the debtor filed a Motion to Strike Opponent's Briefs on July 12, 1994, asking this Court to strike the briefs entitled "Brief of Master Mortgage Investment Fund, Inc., In Support of Motion to Prohibit Use of Cash Collateral" and "BRT Realty Trust's Reply to K.O.A.'s Brief in Opposition to Motion to Prohibit Use of Cash Collateral" for being served

outside the time permitted by the scheduling order dated April 6, 1994. Debtor also suggested that a default judgment should be entered in favor of debtor. The Scheduling Minute Order entered on April 6, 1994, provided that briefs were due on June 24, 1994. The briefs debtor seeks to strike were filed on July 8, 1994. BRT filed a response to debtor's motion to strike which suggests that the delay was caused by the parties' failure to agree on stipulated facts. In light of this fact and the Court's finding that the debtor has not been prejudiced by the delay, the Court denies the debtor's motion to strike.

rights of MMIF and BRT with regard to the Loan Documents. The Cash Collateral Order treats the assignment by MMIF to BRT as security for MMIF's obligation to BRT. Furthermore, the mortgage and the underlying debt cannot be separated as the debtor suggests. K.S.A. 58–2323 clearly states that "[t]he assignment of any mortgage as herein provided shall carry with it the debt thereby secured." Foreseeing the debtor's argument in the present case, the Court in *Army Nat'l Bank v. Equity Developers, Inc.*, 245 Kan. 3, 18, 774 P.2d 919 (1989), noted that:

> ... a mortgage cannot exist separately from the note it secures. A mortgage without a note is worthless. In our view, the problem with splitting the perfection of the note and the mortgage is that Article 9 would be applicable to the security interest in the note and real property law would be applicable to the security interest in the mortgage. We can foresee that in priority contests one party would have a perfected interest in the note and another party would have a perfected interest in the mortgage. The result could be a situation where the creditor of the assigning mortgagee is left with either a note absent its security or a mortgage which may be worthless.

The Court finds that the rents from the Fairway Property constitute cash collateral pursuant to 11 U.S.C. § 363(a). As such, the debtor [5] may not use the cash collateral without consent of each entity that has an interest in such cash collateral or court authorization for such use after notice and a hearing. 11 U.S.C. § 363(c)(2). This Court has previously ordered the debtor to segregate and account for the rents in issue in this case. MMIF has asserted that its interest in the cash collateral is not adequately protected. Debtor has maintained that the rents in issue are not cash collateral, and has not put forth any evidence regarding adequate protection. Section 363(*o*)(1) provides that the debtor has the burden of proof on the issue of adequate protection. Until debtor puts forth evidence regarding adequate protection, debtor is pro-

hibited from using the rents from the Fairway Property.

**IT IS THEREFORE ORDERED BY THE COURT** that debtor's Motion to Strike Opponents' Briefs shall be DENIED.

**IT IS FURTHER ORDERED BY THE COURT** that MMIF's Motion to Prohibit Use of Cash Collateral shall be GRANTED.

This Memorandum shall constitute findings of fact and conclusions of law under Rule 7052 of the Federal Rules of Bankruptcy Procedure and Rule 52(a) of the Federal Rules of Civil Procedure. A judgment based on this ruling will be entered on a separate document as required by Rule 9021 of the Federal Rules of Bankruptcy Procedure and Rule 58 of the Federal Rules of Civil Procedure.

IT IS SO ORDERED.

---

5. Although § 363 refers to the trustee, in this case the debtor in possession would have the rights and duties of a trustee pursuant to 11 U.S.C. § 1107(a).